**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| STEPHEN KUBICK, on behalf of himself and all others similarly situated, | § § § | CASE NO.: 1:14-CV-01013 |
| *Plaintiff*, | § § § § | |
| v. | § § § | |
| WHOLE FOODS MARKET, INC., | § § | Demand For Jury Trial |
| *Defendant*. | § § | |

## CLASS ACTION COMPLAINT

Plaintiff Stephen Kubick ("Plaintiff"), by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, based upon personal knowledge as to himself and his activities, and on information and belief as to all other matters, against defendant, Whole Foods Market, Inc. ("Whole Foods" or "Defendant"), and alleges as follows:

### INTRODUCTION

1.      Defendant Whole Foods markets itself as a healthier alternative to other grocery stores and emphasizes its devotion to healthy eating. Under its exclusive product line, the Whole Foods 365 Everyday Value brand, Defendant manufactures, promotes and sells natural and organic products that satisfy its strict, high quality health standards. With respect to this exclusive product line, Whole Foods claims

on its website that it has a "Private Label registered dietician review[] each nutrition label for accuracy and completeness before the label is printed." Defendant also claims on its website that it ensures that "[a]ll attempts are made to review nutrition labels on a regular basis to ensure accuracy."

2.     As part of its 365 Everyday Value line, Defendant sells Whole Foods 365 Everyday Plain Greek Yogurt (the "Yogurt"), which expressly represents that the Yogurt contains 2 grams of sugar per serving. This statement, however, is false, as studies have found that the Yogurt contains *over 11 grams of sugar* per serving, *more than five and a half times* the labeled amount. In fact, no Greek yogurt on the market has only 2 grams of sugar per serving, as all Greek yogurt—even plain Greek yogurt to which no sugar is added and/or is artificially sweetened—naturally contains more than 2 grams of sugar lactose.

3.     The claimed amount of sugar in the Yogurt is significant, as the sale of Greek yogurt is primarily driven by its perceived superior health benefits and nutritional value over traditional yogurt. Greek yogurt, such as Defendant's Yogurt, has increasingly grown in popularity and is primarily responsible for the 7 billion dollars in yogurt sales each year. For health conscious consumers, including those who are watching their sugar intake, the accuracy of a food product's sugar content is extremely important to maintain a healthy diet.

4.      The Yogurt's falsely labeled 2 grams of sugar is particularly significant as it is lower than any competitors' Greek yogurt, which contain at least 5 to 10 grams of sugar per serving.  By falsely listing a lower sugar content, Defendant was able to sell the Yogurt for a premium in the market place and at a higher price than it would have had it labeled the sugar content correctly.

5.      Plaintiff and consumers, including members of the Class (defined below), relied on the significantly lower sugar content displayed on the nutritional labels on Defendant's Yogurt and believed that the Yogurt contained less sugar and was generally healthier than other brands of Greek yogurt.  Defendant was able to charge more than what its Yogurt would have been worth had it disclosed its true sugar content. Had Defendant disclosed the true sugar content of its Yogurt, Plaintiff would not have purchased the Yogurt or would have paid less for it.

6.      Accordingly, Plaintiff seeks damages and injunctive relief on behalf of himself and the Class under the California Consumers Legal Remedies Act ("CLRA"), the California Unfair Competition Law ("UCL") and Breach of Express and Implied Warranties.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  The amount in controversy in this action exceeds $5,000,000, exclusive of interest and costs and there are more than

100 members of the Class.  Further, Plaintiff, a California citizen, and many Class members are citizens of a different state than the Defendant, a Texas corporation.

8.      This Court has personal jurisdiction over Whole Foods because Whole Foods transacts substantial business and is incorporated in this judicial district.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 (a)-(d) because, *inter alia* Whole Foods regularly transacts business in this District, is incorporated in this District, and a substantial part of the events giving rise to this cause of action took place in this District.

## PARTIES

10.      Plaintiff resides in Santa Monica, California and is a California citizen. During the relevant period, Plaintiff, while in the State of California, was exposed to and saw Whole Foods Yogurt's labels, which expressly stated on the "Nutrition Facts" that the yogurt contained "Sugars 2g" per 170 gram serving size.  Based upon the Yogurt's purported health benefits from its low sugar content, Plaintiff purchased the Yogurt.  Had Whole Foods labeled its Yogurt with the correct sugar content, 11 grams, Plaintiff would not have purchased the Yogurt or would have paid less for it.

11.      Specifically, Plaintiff first purchased the Yogurt in or around June 2011 from a Whole Foods located at 500 Wilshire Boulevard, Santa Monica, California. Plaintiff subsequently purchased Whole Foods Yogurt periodically from Whole Foods, including at the Whole Foods location at 1425 Wilshire Boulevard, Santa

Monica, California. Upon information and belief, Plaintiff paid market value of $1.79 for each 6 ounce, and $5.99 for each 32 ounce, Whole Foods Yogurt he purchased.

12.     Defendant Whole Foods is a Texas corporation with its principal executive offices located at 550 Bowie Street, Austin, Texas 78703.

## FACTUAL BACKGROUND

### a. Background and Whole Foods' Dedication to Healthy Eating

13.     Founded in 1980, Whole Foods is the leading retailer of natural and organic foods and is America's first national "Certified Organic" grocer.  In addition to selling products from other manufacturers, Whole Foods manufactures, promotes and sells natural and organic products under its exclusive product line, the Whole Foods 365 Everyday brand. Under this product line, Defendant sells its 365 Everyday Value Plain Greek Yogurt, which comes in two varieties: "0% milk fat" or "2% milk fat."

14.     The Defendant has over 360 Whole Foods stores and is the 8th largest public food and drug retailer in the United States.[1]  On a weekly basis, over seven million customers visit a Whole Foods location.

15.     Marketing itself as "America's Healthiest Grocery Store™," Whole

---

[1] Whole Foods Market, 2013 Annual Report, *available at* http://www.wholefoodsmarket.com/sites/default/files/media/Global/Company%20Info/PDFs/WFM-2013-Annual-Stakeholders-Report.pdf (last visited Oct. 8, 2014).

Foods' mission is to "promote the vitality and well-being of all individuals by supplying the highest quality, most wholesome foods available," and being "devoted to the promotion of organically grown foods, healthy eating, and the sustainability of our entire ecosystem."[2]   As part of maintaining high quality food, Whole Foods "evaluat[es] the ingredients, freshness, safety, taste, nutritive value and appearance of all the products [it] carr[ies]."[3]   According to Whole Foods, its initiatives to "increase the level of transparency about the products [it] sells . . . continue to make [it] the preferred choice for customers aspiring to a healthier lifestyle."[4]

16.    In addition to marketing its products as being healthy, Whole Foods emphasizes its devotion to help consumers maintain a healthy dietary lifestyle, stating on its website:

> Healthy eating is a basic foundation for optimum health and well-being.  By providing healthy eating education we inspire and empower our stakeholders to make the best health-supportive, delicious food choices to maximize personal health and vitality.  At Whole Foods Market, we believe that focusing on the following four pillars of healthy eating offers the greatest health benefits: . . .

17.    The Company further devotes a portion of its website to "Healthy Eating," which informs consumers how to eat healthy, which healthy foods to shop

---

[2] *Id.*

[3] Whole Foods Market, *We Sell the Highest Quality Natural and Organic Products Available,* http://www.wholefoodsmarket.com/mission-values/core-values/we-sell-highest-quality-natural-and-organic-products-available (last visited on Oct. 8, 2014).

[4] 2013 Annual Report, *supra* note 1.

for, and tips on how to cook healthy recipes.

### b.  Whole Foods Falsely Advertises Its Yogurt's Sugar Content

18.     Defendant represents that the nutritional labels for its exclusive product line, including the nutritional values represented on its Yogurt, are true and accurate. According to Defendant's website:

> Our Private Label registered dietitian reviews each nutrition label for accuracy and completeness before the label is printed.  All attempts are made to review nutrition labels on a regular basis to ensure accuracy and FDA compliance.[5]

19.     Unless this statement on Defendant's website is false, then Whole Foods was fully aware of the contents of its store brand Greek Yogurt and of the fact that the Yogurt's actual sugar content was dramatically higher than what is stated on the label.

20.     Despite its dedication to healthy eating, transparency, and accurate nutritional labeling, the "Nutrition Facts" label on Defendant's Yogurt falsely states that the product contains only 2 grams of sugar per serving:

---

[5] Whole Foods Market, Private Label Brands: Ingredients FAQ, *http://www.wholefoodsmarket.com/about-our-products/product-faq/ingredients* (last visited Oct. 8, 2014)





21.     These representations are false, as studies have found that in actuality,

the Yogurt contains *over 11 grams of sugar*.  Indeed, according to studies conducted

by Consumer Reports, the Yogurt contains an average of 11.4 grams per serving:

> [W]e analyzed six samples of the yogurt from six different lots for
> sugar content.  The results showed an average of 11.4 grams per

serving—*more than five times what's listed on the label.* (emphasis added).[6]

22.     Defendant, as the developer, manufacturer, and exclusive seller and distributor of the Yogurt, knew or should have known that its Yogurt contained more than 2 grams of sugar.   By representing that it reviews its nutritional labels for accuracy and completeness on a regular basis, Defendant knew or should have known that the sugar content listed on its Yogurt was understated and false and misleading.

23.     Moreover, Defendant knew or should have known its Yogurt's sugar content was incorrect based on the sugar content of comparative Greek yogurts. Tellingly, no other Greek yogurt on the market contains only 2 grams of sugar per serving.   In fact, most other Greek yogurt contains *at least* 5 grams of sugar and ranges up to 10 grams of sugar per serving.   Even plain yogurt made with no-sugar and/or artificial "sweeteners" naturally contains more than 2 grams of sugar lactose.

24.     The claimed amount of sugar in the Yogurt is significant, as the sale of Greek yogurt is primarily driven by its perceived superior health benefits and nutritional value over traditional yogurt.  For health conscious consumers, including

---

[6] Consumer Reports, *A Whole Foods 365 Greek Yogurt Has Five Times More Sugar Than its Nutrition Label Shows*, *available at* http://consumerreports.org/cro/news/2014/07/a-whole-foods-365-greek-yogurt-has-five-times-more-sugar-than-its-nutrition-label-shows/index.htm (last visited Oct. 8, 2014).

those who are watching their sugar intake, the accuracy of a food product's sugar content is extremely important to maintain a healthy diet.

25.     Relying on Defendant's false representations, Plaintiff and members of the Class believed the Yogurt was healthier and contained less sugar than other Greek yogurts.  Had Plaintiff known the true sugar content of the Yogurt, Plaintiff would not have purchased the Yogurt, or would have paid less for it.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3) individually and on behalf of the class, defined as follows:

> All residents in the United States who, between November 7, 2010 and the present, purchased "Whole Foods 365 Everyday Value Plain Greek Yogurt" from a Whole Foods Market (the "National Class").

27.     Plaintiff also brings this action on behalf of a sub-class, defined as:

> All California residents who, between November 7, 2010 and the present, purchased "Whole Foods 365 Everyday Value Plain Greek Yogurt" from a Whole Foods Market while in the state of California (the "California Class" collectively, with the National Class, the "Class").

28.     Excluded from the Class are the following individuals and/or entities: any entity in which Defendant has a controlling interest; Defendant's officers, directors affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries and assigns; and any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

29.     Plaintiff respectfully reserves the right to amend the Class definition after he has had an opportunity to conduct discovery.

30.     ***Numerosity. Rule 23(a)(1).***  The Class is so numerous that joinder of all members is impracticable.  Plaintiff is informed and believes that the proposed Class contains at least thousands of purchasers of Whole Foods Yogurt.  The number of Class members is unknown to the Plaintiff but could be discerned from the records maintained by Whole Foods.

31.     ***Existence of Common Questions of Law and Fact. Rule 23(a)(2).*** This action involves substantial questions of law and fact common to all members of the Class, which include, but are not limited to, the following:

   a.   Whether the Yogurt contains more than 2 grams of sugar per 170 gram serving;

   b.   Whether Whole Foods' false labeling described herein constitutes a deceptive act or practice in violation of the CLRA;

   c.   Whether Whole Foods' conduct described herein constitutes an unlawful, unfair, and/or fraudulent business practice in violation of the UCL;

   d.   Whether Whole Foods' conduct constitutes a breach of express or implied warranty;

   e.   Whether Plaintiff is entitled to damages; and

   f.   Whether Plaintiff is entitled to injunctive relief, restitution or other equitable relief and/or relief as may be proper.

32.     ***Typicality.  Rule 23(a)(3).***  All members of the Class have been subject to and affected by the same conduct by Whole Foods.  The claims alleged herein are

based on the same violations by Whole Foods that harmed Plaintiff and members of the Class.  By purchasing the Yogurt during the relevant time period, all members of the Class were subjected to the same wrongful conduct.  Plaintiff's claims are typical of the Class' claims and do not conflict with the interests of any other members of the Class.  Defendant's unlawful, unfair, deceptive, and/or fraudulent actions and breaches of warranty concern the same business practices described herein irrespective of where they occurred or were experienced.

33.   ***Adequacy.  Rule 23(a)(4).***  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

34.   ***Injunctive and Declaratory Relief.  Rule 23(b)(2).***  Whole Foods' actions regarding the deceptions regarding the Yogurt are uniform as to all members of the Class.  Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief as requested herein is appropriate respecting the Class as a whole.

35.   ***Predominance and Superiority of Class Action.   Rule 23(b)(3).*** Questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other methods for

the fast and efficient adjudication of this controversy, for at least the following reasons:

    a.  Absent a class action, members of the Class as a practical matter will be unable to obtain redress, Defendant's violations of their legal obligations will continue without remedy, additional consumers will be harmed, and Defendant will continue to retain its ill-gotten gains;

    b.  It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

    c.  When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all members of the Class;

    d.  A class action will permit an orderly and expeditious administration of each Class member's claims and foster economies of time, effort, and expense;

    e.  A class action regarding the issues in this case does not create any problems of manageability; and

    f.  Defendant has acted on grounds generally applicable to the members of the Class, making class-wide monetary relief appropriate.

## COUNT I
## VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT
### (Cal. Civil Code §§ 1750 *et seq.*)
### (On Behalf of the California Class)

36.    Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

37.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* ("CLRA" or the "Act"), which provides that enumerated listed "unfair methods of competition and unfair or

deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful," CLRA § 1770, and that "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against such person to recover or obtain," various forms of relief, including injunction and damages.  Cal. Civ. Code § 1780.

38.     On October 22, 2014, Plaintiff sent Defendant a CLRA notice letter providing the notice required by California Civil Code § 1782(a).  Plaintiff sent the letter via certified mail, return receipt requested, to the location in California where Plaintiff purchased Whole Foods' Yogurt, as well as to Defendant's principal place of business in Texas, and to the Secretary of the State of Texas, advising Defendant that it is in violation of the CLRA and must correct, replace or otherwise rectify the goods and/or services alleged to be in violation of § 1770.  Defendant was further advised that in the event the relief requested has not been provided within thirty (30) days, Plaintiff will amend this Complaint to include a request for monetary damages pursuant to the CLRA.  A true and correct copy of Plaintiff's letter is attached hereto as Exhibit A.

39.     Plaintiff and the California Class were deceived by Defendant's unlawful practices as described more fully above, which included the marketing,

advertising, packaging and labeling of the Yogurt as containing 2 grams of sugar, which was deceptive, false and misleading given the Yogurt actually contains over 11 grams of sugar.

40.    Plaintiff and members of the California Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

41.    Defendant's Yogurt was and is "good[s]" within the meaning of Cal. Civ. Code §§ 1761(a) & (b).

42.    Defendant violated the CLRA by engaging in at least the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the California Class which were intended to result in, and did result in, the sale of the Yogurt:

> (5) Representing that [Whole Foods Yogurt has] . . . approval, characteristics . . . uses [or] benefits . . . which [it does] not have . . . .
>
> ***
>
> (7) Representing that [Whole Foods Yogurt is] of a particular standard, quality or grade . . . if [it is] of another.
>
> ***
>
> (9) Advertising goods . . . with intent not to sell them as advertised.

43.    As such, Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices because it does not sell, and because it intends not to sell, the Yogurt as advertised and instead misrepresents the particulars by, in its marketing and labeling, representing the Yogurt as containing only 2 grams

of sugar per serving, when it knew, or should have known, that the representations were deceptive, false and misleading.

44.     The true sugar content of the Yogurt would have been material to a reasonable customer in his or her decision to purchase the Yogurt and/or purchase the Yogurt at the price at which it was offered.

45.     Defendant had a duty to disclose this information to Plaintiff and the members of the California Class.  Defendant was in a position to know the true sugar content of its Yogurt from its own product knowledge and the knowledge of the sugar content in other similar Greek yogurt products, while consumers were not reasonably in a position to be aware of Defendant's internal product information.

46.     Defendant provided Plaintiff and the other California Class members with Yogurt that did not match the quality portrayed by its marketing and labeling.

47.     As a result, Plaintiff and members of the California Class have suffered irreparable harm.  Plaintiff's and the other California Class members' injuries were proximately caused by Defendant's conduct as alleged herein.  Plaintiff, individually and on behalf of all other California Class members, seeks entry of an order enjoining Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2).  If Defendant is not restrained from engaging in these practices in the future, Plaintiff and the California Class will continue to suffer harm.

48.     Pursuant to section 1780(d) of the CLRA, attached hereto as Exhibit B is an affidavit showing that this action has been commenced in the proper forum.

**COUNT II**
**Violations of Unfair Competition Law**
**(Business & Professions Code §§ 17200, *et seq.*)**
**(On Behalf of the California Class)**

49.     Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

50.     The Unfair Competition Law, Cal. Business & Professions Code § 17200, *et seq.* ("UCL"), prohibits any "unlawful," "unfair," or fraudulent, business act or practice and any false or misleading advertising.

51.     Defendant has engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by concealing from Plaintiff and the California Class the material fact that the Yogurt's sugar content was over five and a half times the claimed amount on the label.

52.     As a result of Defendant's pervasive false marketing and advertising, including deceptive and misleading acts and omissions as detailed in this Complaint, Plaintiff and other members of the California Class have in fact been harmed as described above.  If Defendant had disclosed the true nutritional information discussed above about the Yogurt and otherwise been truthful about its sugar content, Plaintiff would not have purchased Defendant's Yogurt.  Defendant was also able to

charge more than what its Yogurt would have been worth had it disclosed the truth about them.

53.     As a result of Defendant's unlawful, unfair, and fraudulent practices, Plaintiff and the other California Class members have suffered injury in fact and lost money.

54.     As a result of its deception, Defendant has been able to reap unjust revenue and profit in violation of the UCL.

55.     Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct.  Accordingly, injunctive relief is appropriate for the California Class.

56.     As a result of Defendant's conduct in violation of the UCL, Plaintiff and members of the California Class have been injured as alleged herein in amounts to be proven at trial because they purchased Whole Foods' Yogurt without full disclosure of the material facts discussed above.

57.     As a result, Plaintiff individually, and on behalf of the California Class, and the general public, seek restitution and disgorgement of all money obtained from Plaintiff and the members of the California Class collected by Defendant as a result of unlawful, unfair, and/or fraudulent conduct, and seek injunctive relief, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

## COUNT III
### Breach of Express and Implied Warranty
### (On Behalf of the National Class and the California Class)

58.     Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

59.     Plaintiff brings this claim individually and on behalf of the National Class and the California Class.

60.     Plaintiff, and each member of the Class, formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased the Yogurt.  The terms of that contract include the promises and affirmations of fact made by Defendant on its Yogurts' nutritional labels.  The information provided on the Yogurts' nutritional labels constitute express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other.

61.     Plaintiff and the Class members performed their obligations under the contract.

62.     Defendant breached the terms of the express warranties with Plaintiff and the Class by not providing Yogurt with the same sugar content that was displayed on the Yogurt's nutritional label.

63.     Defendant was on notice of its breaches of express and implied warranty by virtue of the Consumer Reports article referenced herein, the fact that the sugar

content Defendant listed was strikingly low compared to other similar Greek yogurt, and by virtue of the fact Defendant had knowledge of the contents and ingredients that were in its Yogurt.

64.     By placing the Yogurt into the stream of commerce, by operation of law, including California Civil Code § 1791 *et seq.,* Defendant also impliedly warranted to Plaintiff and the Class that its Yogurt was accurately labeled in conformance with the law.

65.     As a result of Defendant's breach of its contract, Plaintiff and the Class have been damaged in the amount of the purchase price of the Yogurt they purchased.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for relief for each cause of action set forth in this Complaint as follows:

a.     Certifying the Class as requested herein, appointing Plaintiff as representative of the Class and appointing Plaintiff's attorneys as class counsel;

b.     Requiring Defendant to disgorge or return all monies, revenues and profits obtained by means of any wrongful act or practice to Plaintiff

and the members of the Class under each cause of action where such relief is permitted;

c.      Enjoining Defendant from continuing the unlawful practices as set forth herein, including marketing or selling of Yogurt without disclosing the true sugar and nutritional content, and directing Defendant to engage in corrective action, or providing other injunctive or equitable relief;

d.      Awarding damages for breach of express and implied warranty;

e.      Awarding all equitable remedies available pursuant to Cal. Civil Code §§ 1750 *et seq*;

f.      Awarding all equitable remedies available pursuant to Cal. Civ. Code § 1780 and other applicable law;

g.      Awarding attorneys' fees and costs;

h.      Awarding pre-judgment and post-judgment interest at the legal rate; and

i.      Providing such further relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: November 10, 2014

**STANLEY LAW GROUP**

By: _____*/s/ Marc R. Stanley*_____
MARC R. STANLEY; TXBN 19046500
marcstanley@mac.com
MARTIN WOODWARD; TXBN 00797693
mwoodward@stanleylawgroup.com
3100 Monticello Avenue, Suite 770
Dallas, TX  75205
Telephone: (214) 443-4300
Facsimile: (214) 443-0358

**LEVI & KORSINSKY LLP**
SHANNON L. HOPKINS
shopkins@zlk.com
NANCY A. KULESA
nkulesa@zlk.com
STEPHANIE A. BARTONE
sbartone@zlk.com
733 Summer Street, Suite 304
Stamford, CT 06901
Telephone:  (212) 363-7500
Facsimile:  (866) 367-6510

**WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLP**
JANINE L. POLLACK
pollack@whafh.com
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653

**STANLEY LAW GROUP**
MATTHEW J. ZEVIN
mzevin@aol.com
225 Broadway, Suite 1350
San Diego, California 92101
Telephone: (619) 235-5306
Facsimile: (815) 377-8419

*Counsel for Plaintiff and the Class*