## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

IN RE: WHOLE FOODS MARKET, INC.,
GREEK YOGURT MARKETING
AND SALES PRACTICES LITIGATION

This document relates to *Kubick v. Whole Foods Market, Inc.* Case No. 1:14-CV-01013-SS

Case No. A-14-MC-2588-SS

[MDL No. 2588]

A: 14-cv-1013 SS

### WFM PRIVATE LABEL L.P.'S CROSS-COMPLAINT AGAINST
### 1048547 ONTARIO, INC. D/B/A SKOTIDAKIS GOAT FARM

Defendant and Cross-Complainant WFM Private Label, LP ("WFMPL") hereby files this Cross-Complaint against Defendant and Cross-Defendant 1048547 Ontario, Inc. d/b/a Skotidakis Goat Farm ("Skotidakis").

### PARTIES

1.       WFMPL is a Delaware limited partnership with its principal place of business in Austin, Texas, United States.

2.       Skotidakis is a Canadian corporation with its principal place of business in St-Eugene, Ontario, Canada.

### JURISDICTION AND VENUE

3.       This Court has subject-matter jurisdiction over this Cross-Complaint pursuant to 28 U.S.C. § 1332(a)(2), in that the amount in controversy exceeds $75,000 and the claims are asserted between a citizen of one or more U.S. states and a citizen of a foreign state.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

4.       Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because most of the events or omissions giving rise to WFMPL's cross-claims against Skotidakis occurred in this

District.  Venue is also proper in this Court because Skotidakis consented to venue in courts located in Austin, Travis County, Texas.

     5.     This Court has personal jurisdiction over Skotidakis because Skotidakis has consented to jurisdiction in this Court.  This Court also has personal jurisdiction because this Cross-Complaint arises out of or is related to Skotidakis' contacts with this forum.

## FACTUAL ALLEGATIONS

### *The Contract*

     6.     WFMPL and Skotidakis entered into a Private Label Vendor Agreement dated effective April 1, 2012 (the "Contract").  A true and correct copy of the Contract is attached hereto as **Exhibit A**.  Pursuant to the Contract, Skotidakis agreed to supply stores owned or operated by affiliates of WFMPL with Whole Foods Market 365 Everyday Value Plain Greek Yogurt (the "Yogurt"), a Whole Foods Market private label product.  Contract, ¶ 1.

     7.     With respect to the labeling of the Yogurt, Skotidakis agreed that it would be **solely** responsible for confirming that the Yogurt's labels and packaging were in compliance with all applicable laws.  Contract, ¶ 4.

     8.     In connection with that obligation, as part of the product development process, Skotidakis agreed to provide to WFMPL information relevant to labels of the Yogurt, including a nutrition panel in compliance with all applicable laws.  Contract, ¶ 4.

     9.     In addition, Skotidakis provided WFMPL a number of representations, warranties, and covenants regarding the Yogurt and its labeling.  For example:

     a.     Skotidakis represented, warranted, and agreed that the Yogurt (including packaging and labels) would be merchantable and otherwise free from defects at the time of delivery.  Contract, ¶ 2(a)(i)(A).

     b.     Skotidakis represented, warranted, and agreed that the Yogurt (including packaging and labels) would not include any illegal, misleading or untrue label claim or fail to include a required label claim.  Contract, ¶ 2(a)(i)(D).

2

     c.     Skotidakis represented, warranted, and agreed that the Yogurt (including packaging and labels) would not otherwise be adulterated or misbranded within the meaning of applicable law and will comply with all applicable laws.  Contract, ¶ 2(a)(i)(D).

10.     Skotidakis assumed defense and indemnity obligations under the Contract.  For example:

     a.     Skotidakis agreed to indemnify and defend WFMPL from and against any and all losses caused in whole or in part arising from the failure or alleged failure of the Yogurt to comply with any claim or representation on its label or the failure or alleged failure of the Yogurt to disclose information about the Yogurt.  Contract, ¶¶ 11(a)(iv), 11(d).

     b.     Skotidakis further agreed to indemnify WFMPL for any and all losses caused in whole or in part arising from any recall or withdrawal of the Yogurt initiated because of or resulting from the condition of the Yogurt which existed prior to the acceptance of the Yogurt by Whole Foods Market upon delivery.  Contract, ¶ 11(a)(vii), 11(d).

     c.     Skotidakis further agreed to indemnify and defend WFMPL for any and all losses caused in whole or in part arising from Skotidakis' breach or alleged breach of any representation, warranty, covenant or other obligation of Skotidakis set forth in the Contract.  Contract, ¶ 11(a)(i), 11(d).

     d.     Skotidakis further agreed to indemnify and defend WFMPL for any and all losses caused in whole or in part arising from Skotidakis' negligence, recklessness, or willful misconduct or of any third party involved in the production or distribution Yogurt.  Contract ¶ 11(a)(ii), 11(d).

11.     The term "Losses" as used in the Contract's indemnification provision is defined to include, but is not limited to, "reasonable attorneys fees, court costs and other costs of defense."  Contract ¶ 11(c); *see also* ¶ 11(d).

12.     Skotidakis agreed that its obligation to indemnify under the Contract includes the obligation to indemnify not only WFMPL but also all of WMPL's direct and indirect affiliates, parents, subsidiaries and related entities.  Contract, ¶ 11(c).  Thus, Skotidakis' indemnification obligation under the Contract extended to the other Whole Foods Market entities sued as Defendants in the Lawsuits included in MDL 2588, which is before this Court and described further below in this Cross-Complaint.

13.     To the extent WFMPL implemented a recall or withdrawal, Skotidakis agreed to consult directly with WFMPL for instructions relating thereto and to pay all reasonable expenses associated with the recall or withdrawal.  Contract, ¶¶ 6(a), 6(b).

14.     The Contract provided that if an action arose to enforce the terms of the Contract, the prevailing party would be entitled to recover all costs of suit, including reasonable attorneys' fees and court costs.  Contract, ¶ 16.

### *The Product Evaluation and Development Process*

15.     As part of the product evaluation and development process for the Yogurt, in or about April 2012, Skotidakis provided WFMPL the results of independent third-party lab tests that supported the sugar content disclosure on the Yogurt's label.

16.     Skotidakis also provided to WMPL certifications, in the form of certified Technical Specification Sheets, that the sugar content disclosure on the label of the Yogurt was correct and supported by independent third-party lab results.

17.     Skotidakis agreed to notify WFMPL promptly if any product test indicated the Yogurt may not comply with its product specifications, the Contract or an applicable law, and provide the results to WFMPL at WFMPL's request.  Contract, ¶ 5(c).

*Consumer Reports' Testing of the Yogurt and WFMPL's Related Investigation*

18.     On July 17, 2014, *Consumer Reports* reported that it had tested the sugar content of the Yogurt and found it to be on average 11.4 grams per serving instead of the two grams per serving disclosed on the label.

19.     WFMPL promptly began investigating the claims made in the *Consumer Reports* publication to attempt to determine how *Consumer Reports*, in or about July 2014, could have obtained test results for the sugar content of the Yogurt that were different from the independent third-party lab test results Skotidakis provided WFMPL as part of the product evaluation and development process in or about April 2012.

20.     WFMPL contacted *Consumer Reports* to request information about its reported testing.  However, WFMPL was unable to obtain all of the information it requested from *Consumer Reports* because the organization asserted a reporter's privilege for certain information regarding its testing.

21.     As part of its investigation following the *Consumer Reports* publication in July 2014, WFMPL also contacted Skotidakis.  At that time, Skotidakis provided WFMPL <u>for the first time</u> third-party nutritional test results from nearly a year earlier—September 27, 2013— that indicated the sugar content for the Yogurt sample then-tested was higher (although substantially lower than the *Consumer Reports* test results) than the sugar content for the sample tested by the independent third-party lab in conjunction with the test results Skotidakis provided WFMPL as part of the product evaluation and development process in or about April 2012.

22.     Skotidakis not only failed to notify WFMPL of the September 27, 2013 test result at or around September 27, 2013, but when WFMPL inquired of Skotidakis regarding various aspects of the Nutrition Facts on the label of the Yogurt, Skotidakis assured WFMPL that its ability to achieve certain of the Yogurt's Nutrition Facts was attributable to its proprietary straining process.

***WFMPL's Voluntary Withdrawal of the Yogurt***

23.     In an abundance of caution, WFMPL voluntarily withdrew the Yogurt from Whole Foods Market retail locations nationwide.  WFMPL issued a notice of voluntary withdrawal of the 0% fat version of the Yogurt on August 19, 2014.  And WFMPL issued a notice of voluntary withdrawal of the 2% fat version of the Yogurt on August 29, 2014.

24.     Yet after WFMPL gave notice to Skotidakis of its voluntary withdrawal and instructed Skotidakis to stop shipping the Yogurt, WFMPL received reports that Skotidakis continued to ship Yogurt from its facilities and falsely represented that the Yogurt it was shipping was not subject to the voluntary withdrawal, despite the fact that WFMPL's notices clearly applied to all lots of the Yogurt.

25.     As a result of the voluntary withdrawal, WFMPL incurred costs and expenses, including but not limited to the cost of unsold Yogurt.

***The Underlying Lawsuits***

26.     Shortly after the *Consumer Reports* publication, beginning August 1, 2014, eleven putative consumer class action lawsuits were filed citing *Consumer Reports'* test results, as set forth below, each referring to the *Consumer Reports* publication and challenging the sugar content disclosure on the Yogurt's labels.

27.     On or about August 1, 2014, Tracey Knox filed a putative class and representative action against Whole Foods Market, Inc. ("WFMI") in the U.S. District Court for the District of Massachusetts, Case No. 14-CV-13185 (hereinafter the "**Knox Lawsuit**").  Tracey Knox subsequently amended his complaint to add additional plaintiffs Sarah McDonagh, Derek Guluba, and Barbara Trevino and substituted Whole Foods Market Group, Inc. ("WFMGI") and WFMPL as defendants in place of WFMI.

28.     On or about August 6, 2014, Ryan Markley filed a putative class and representative action against WFMI in the U.S. District Court for the Middle District of Florida, Case No. 14-CV-01892 (hereinafter the "**Markley Lawsuit**").  Ryan Markley subsequently amended his Complaint to substitute WFMGI and WFMPL as defendants in place of WFMI.

29.     On or about August 8, 2014, Mark Bilder filed a class and representative action against WFMI in the New Jersey Superior Court for Burlington County, Law Division, Case No. BUR-L-1904-14 (hereinafter the "**Bilder Lawsuit**"). Mark Bilder subsequently amended his complaint to substitute WFMGI and WFMPL as defendants in place of WFMI.  WFMGI and WFMPL subsequently removed the Bilder Action to the U.S. District Court for the District of New Jersey, where it was assigned Case No. 14-CV-06146.

30.     On or about August 11, 2014, Carmine Clemente and Samantha Kilgallen filed a class and representative action against WFMI in the State of Pennsylvania Court of Common Pleas for Philadelphia County, Case No. 1271 (hereinafter the "**Clemente Lawsuit**").  Carmine Clemente and Samantha Kilgallen subsequently amended their complaint to substitute WFMGI and WFMPL as defendants in place of WFMI.  WFMGI and WFMPL subsequently removed the Clemente Action to the U.S. District Court for the Eastern District of Pennsylvania, where it was assigned Case No. 14-CV-05652.

31.     On or about August 26, 2014, Chas Jackson and Josh Koffman filed a class and representative action against WFMI in the U.S. District Court for the Central District of California, Case No. 14-CV-06705 (hereinafter the "**Jackson Lawsuit**").  Chas Jackson and Josh Koffman subsequently amended their complaint to substitute WFMPL, Whole Foods Market California, Inc. ("WFMCI"), Mrs. Gooch's Natural Food Markets, Inc. ("Mrs. Gooch's"), and WFM-WO, Inc. ("WFM-WO") as defendants in place of WFMI.

32.     On or about August 29, 2014, Kevin Grodnick filed a class and representative action against WFMI in the U.S. District Court for the Southern District of New York, Case No. 14-CV-07035 (hereinafter the "**Grodnick Lawsuit**").  Kevin Grodnick subsequently amended his complaint to add plaintiffs Janet Woo and Kathy Yeung and to substitute WFMGI and WFMPL as defendants in place of WFMI.

33.     On or about September 13, 2014, Sarah Rodhouse filed a class and representative action against WFMG in the 22nd Judicial Circuit Court of the City of St. Louis, Missouri, Case No. 1422-CC09626 (hereinafter the "**Rodhouse Lawsuit**").  WFMGI subsequently removed the

Rodhouse Action to the U.S. District Court for the Eastern District of Missouri, where it was assigned Case No. 14-CV-01764.

34.     On or about October 6, 2014, Ashley Richards filed a class and representative action against WFMG and WFMPL in the U.S. District Court for the District of Arizona, Case No. 14-CV-02221 (hereinafter the "**Richards Lawsuit**").

35.     On or about October 10, 2104, Richard Steeley filed a class and representative action against Whole Foods Market Rocky Mountain/Southwest, L.P. ("WFM-RMSW") and WFMPL in the U.S. District Court for the Western District of Texas, Case No. 14-CV-00932 (hereinafter the "**Steeley Lawsuit**").

36.     On or about November 10, 2014, Stephen Kubick filed a class and representative action against WFMI in the U.S. District Court for the Western District of Texas, Case No. 14-CV-1013 (hereinafter the "**Kubick Lawsuit**").

37.     On or about December 12, 2014, Meredith Frydman filed a class and representative action against WFMGI and WFMPL in the Fifteenth Judicial Circuit Court for County of Palm Beach, Florida, Case No. 2014CA014864 (hereinafter the "**Frydman Lawsuit**").  WFMGI and WFMPL subsequently removed the Frydman Action to the U.S. District Court for the Southern District of Florida, where it was assigned Case No. 15-CV-80007.

38.     The Knox Lawsuit, Markley Lawsuit, Bilder Lawsuit, Clemente Lawsuit, Jackson Lawsuit, Grodnick Lawsuit, Rodhouse Lawsuit, Richards Lawsuit, Steeley Lawsuit, Kubick Lawsuit, and Frydman Lawsuit are collectively referred to herein as the "Lawsuits" or "Underlying Lawsuits."

39.     The U.S. Panel on Multidistrict Litigation transferred the Underlying Lawsuits to the Western District of Texas, MDL No. 2588, W.D. Texas Case No. A-14-MC-2588 for coordinated or consolidated pretrial proceedings.

## Claims Raised in the Underlying Lawsuits

40.     In the Underlying Lawsuits, the Plaintiffs alleged that the Yogurt label stated that the Yogurt contained two grams of sugar per serving, and that this statement was false.  Plaintiffs

alleged that in fact the Yogurt contained on average 11.4 grams of sugar per serving, as claimed by *Consumer Reports*.  As a result, Plaintiffs alleged that WFMPL and the other Whole Foods Market Defendants were able to sell the Yogurt at a higher price than if the sugar content were accurately disclosed on the Yogurt's label.  Accordingly, Plaintiffs alleged that all consumers who purchased the Yogurt paid more for the Yogurt than they would have had the alleged higher sugar content been disclosed on the Yogurt's label.  Plaintiffs from certain states also later asserted alleged tort claims against the Whole Foods Market Defendants based on alleged spoliation of evidence.

41.    Specifically, after the underlying actions were transferred to the Western District of Texas, Plaintiffs filed a Consolidated Amended Complaint ("FACC") in which they asserted claims on behalf of themselves and a nationwide class against the Whole Foods Market Defendants.  Plaintiffs also asserted claims on behalf of sub-classes of the states in which they allege they reside and in which they allege they purchased the challenged Yogurt.  The sub-classes include consumers in Florida, Illinois, New York, New Jersey, Pennsylvania, Illinois, California, Massachusetts, Arizona, Missouri, and Texas.  In the FACC, Plaintiffs asserted claims for:  (1) breach of warranty; (2) unjust enrichment; (3) negligent misrepresentation; and (4) declaratory and injunctive relief.  Plaintiffs also asserted claims under various consumer protection statutes of the states in which they allege they reside and purchased the challenged Yogurt.  These claims include alleged violations of:  (1) the Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522; (2) the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750; (3) the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; (4) California False Advertising Law, California Bus. & Prof. Code § 17500; (5) the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201; (6) the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1; (7) Massachusetts G.L. ch. 93A; (8) Massachusetts G.L. ch. 266 § 91; (9) of Massachusetts G.L. ch. 94 §§ 187, 190 and 105 CMR 590.001; (10) the New Jersey Truth in Consumer Contract, Warranty, and Notice Act, N.J.S.A.§ 56:12-14; (11) the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1; (12) New York Gen. Bus. Law ¶ 349; (13)

New York Gen. Bus. Law § 350; (14) the Pennsylvania Unfair Trade Practices Act, 73 Pa. Cons. St. § 201-1; (15) Texas Bus. & Comm. Code § 17.41; and (16) the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.020.43.  Plaintiffs also asserted a claim under "'Other States' Consumer Protection Statutes."

42.     Shortly thereafter, Plaintiffs filed a Consolidated Second Amended Complaint ("SACC").  Plaintiffs alleged the same claims in the SACC as they alleged in the FACC; however, Plaintiffs added as a defendant Skotidakis, Inc., which appeared in the Lawsuits as 1048547 Ontario, Inc. d/b/a Skotidakis Goat Farm.

43.     After the Court granted a Motion to Dismiss the SACC brought by Whole Foods, with leave to amend, Plaintiffs filed a Consolidated Third Amended Complaint ("TACC") in which Plaintiffs asserted the same claims set forth in Plaintiffs' SACC; however, Plaintiffs from Illinois, Pennsylvania, and New Jersey alleged in the TACC additional tort claims against the Whole Foods Market Defendants and Skotidakis on behalf of themselves and their respective state sub-classes.  Specifically, Illinois Plaintiff Galuba, Pennsylvania Plaintiffs Clemente and Kilgallen, and New Jersey Plaintiff Bilder further alleged claims of negligence against all Defendants on behalf of themselves and their alleged respective state sub-classes.  New Jersey Plaintiff Bilder further alleged an intentional tort claim against all Defendants on behalf of himself and the alleged New Jersey sub-class.  Plaintiffs Galuba, Clemente, Kilgallen and Bilder claimed that the Defendants negligently breached a duty to preserve Yogurt for them to use in the litigation and Plaintiff Bilder further alleged that Defendants intentionally destroyed Yogurt to disrupt the litigation.

44.     In the TACC, Plaintiffs sought, on behalf of themselves and the putative classes, compensatory damages, declaratory and injunctive relief, costs and attorneys' fees, punitive or exemplary damages, restitution, and disgorgement of profits.

**WFMPL's Demand That Skotidakis Provide Defense and Indemnity**

45.     WFMPL provided notice of each of the Underlying Lawsuits to Skotidakis and demanded that Skotidakis defend and indemnify it as Skotidakis was required to under the Contract.

46.     Specifically, on or about August 5, 2014, WMPL provided notice to Skotidakis of the Knox Lawsuit and Markley Lawsuit and demanded from Skotidakis defense and indemnity for the claims asserted in those actions.

47.     On or about August 27, 2014, the WFMPL provided notice to Skotidakis of the Clemente Lawsuit, the Jackson Lawsuit, and the Bilder Lawsuit and demanded from Skotidakis defense and indemnity for the claims asserted in those actions.

48.     On or about November 18, 2014, WFMPL provided notice to Skotidakis of the Grodnick Lawsuit, Richards Lawsuit, Rodhouse Lawsuit, Steeley Lawsuit, and Kubick Lawsuit and demanded from Skotidakis defense and indemnity for the claims asserted in those actions.

49.     On or about December 18, 2014, WFMPL provided notice to Skotidakis of the Frydman Lawsuit and demanded from Skotidakis defense and indemnity for the claims asserted in the action.

**Skotidakis' Acceptance of WFMPL's Demand for Defense and Indemnity**

50.     In response to WFMPL's notice of the Underlying Lawsuits, Skotidakis agreed to defend and indemnify WFMPL as required under the Contract.

51.     On or about September 25, 2014, Skotidakis confirmed in writing its intent to defend and indemnify WFMPL from the claims in the Knox Lawsuit, Markley Lawsuit, Jackson Lawsuit, Bilder Lawsuit, and Clemente Lawsuit.

52.     On or about December 19, 2014, Skotidakis confirmed in writing its intent to defend and indemnify WFMPL from the claims in the Grodnick Lawsuit, Richards Lawsuit, Rodhouse Lawsuit, Steeley Lawsuit, Kubick Lawsuit, and Frydman Lawsuit.

**Skotidakis' Failure to Defend and Indemnify WFMPL**

53.     Skotidakis, however, failed to defend and indemnify WFMPL.

54.     This was not without good faith effort by WFMPL to work with Skotidakis to help it meet its obligations under the Contract.  In February 2015, Skotidakis was seriously delinquent in its payment obligations to WFMPL for the expenses it was incurring associated with the Underlying Lawsuits.  WFMPL, while expressly reserving all of its rights under the Contract, worked with Sktoidakis on a payment plan, despite having no obligation to do so. Skotidakis represented to WFMPL that it would pay $20,000 per month to WFMPL for its fees and costs associated with defense of the Underlying Lawsuits.  Skotidakis, however, only made two such payments then stopped.

55.     As a result of Skotidakis' failure to defend WFMPL, WFMPL defended itself in the Underlying Lawsuits and incurred costs and expenses, including but not limited to substantial attorneys' fees.

56.     On or about November 23, 2106, WFMPL reached an agreement in principal to resolve all of Plaintiffs' claims in the Underlying Lawsuits.  The Parties have since documented the settlement and are in the process of obtaining the required signatures to the written settlement agreement.  In connection with the negotiation of the settlement, WFMPL provided notice to Skotidakis of the monetary component in the settlement of the Underlying Lawsuits before agreeing to it.  Skotidakis did not object to the monetary amount in the settlement, nor did it agree to pay it.  As a result, WFMPL incurred the obligation to pay the entire monetary amount in the settlement agreement to resolve Plaintiffs' claims.

## CLAIMS FOR RELIEF

## CLAIM I — BREACH OF CONTRACT

## (FAILURE TO INDEMNIFY AND DEFEND)

57.     WFMPL re-alleges as though fully set forth at length and incorporated herein by this reference, all of the allegations and statements contained in each of the preceding paragraphs.

58.     Skotidakis entered into the Contract with WFMPL.

59.     The Contract required Skotidakis to indemnify WFMPL from and against any and all losses as set forth in Paragraph 10, including but not limited to the alleged failure of the Yogurt to comply with any claim or representation on its label as was alleged in the Underlying Lawsuits, and to defend the WFMPL against the claims made in the Underlying Lawsuits. *See* Contract ¶ 11.

60.     WFMPL performed, tendered performance, or was excused from performing its contractual obligations under the Contract.

61.     All conditions precedent for recovery have occurred or been waived or excused by Skotidakis.

62.     Notwithstanding the foregoing, Skotidakis failed to indemnify WFMPL for the claims made in the Underlying Lawsuits and failed to defend WFMPL against the claims made in the Underlying Lawsuits.

63.     As a direct and proximate result, WFMPL has been damaged, including but not limited to incurring attorneys fees' and other litigation expenses in defense of the Underlying Lawsuits and incurring the obligation to pay a monetary amount to settle Plaintiffs' claims in the Underlying Lawsuits.

## CLAIM II — BREACH OF CONTRACT

## (FAILURE TO PAY REASONABLE EXPENSES OF WITHDRAWAL)

64.     WFMPL re-alleges as though fully set forth at length and incorporated herein by this reference, all of the allegations and statements contained in each of the preceding paragraphs.

65.     Skotidakis entered into the Contract with WFMPL.

66.     In doing so, Skotidakis agreed to indemnify WFMPL for any and all losses caused in whole or in part arising from any recall or withdrawal of the Yogurt initiated because of or resulting from the condition of the Yogurt which existed prior to the acceptance of the Yogurt by Whole Foods Market upon delivery.  Contract ¶ 11(a)(vii), 11(d).

67.     Skotidakis further agreed that to the extent WFMPL implemented a recall or withdrawal, Skotidakis would consult directly with WFMPL for instructions relating thereto and to pay all reasonable expenses associated with the recall or withdrawal.  Contract ¶¶ 6(a), 6(b).

68.     WFMPL performed, tendered performance, or was excused from performing its contractual obligations under the Contract.

69.     All conditions precedent for recovery have occurred or been waived or excused by Skotidakis.

70.     Notwithstanding the foregoing, detailed above, because Skotidakis' delivered to Whole Foods Markets allegedly mislabeled Yogurt that did not comply with all applicable laws, WFMPL withdrew the Yogurt.

71.     Under the Contract, Skotidakis was obligated to indemnify WFMPL from and against any and all losses arising from the withdrawal and to pay all reasonable expenses associated with the recall or withdrawal, but Skotidakis failed to do so.

72.     As a direct and proximate result of Skotidakis' failure to indemnify WFMPL for all losses arising out of the withdrawal, WFMPL incurred expenses, including without limitation costs incurred in voluntarily withdrawing the Yogurt, including the cost of facilitating the withdrawal and the cost of unsold Yogurt.

## CLAIM III — BREACH OF CONTRACT

## (BREACH OF OTHER CONTRACTUAL PROVISIONS)

73.     WFMPL re-alleges as though fully set forth at length and incorporated herein by this reference, all of the allegations and statements contained in each of the preceding paragraphs.

74.     Skotidakis entered into the Contract with WFMPL.

75.     Pursuant to the Contract, Skotidakis made certain representations, warranties, and covenants and assumed certain obligations, as set forth in Paragraphs ¶¶ 7, 8, 9, and 17.

76.     WFMPL performed, tendered performance, or was excused from performing its contractual obligations under the Contract.

77.     All conditions precedent for recovery by WFMPL have occurred or been waived or excused by Skotidakis.

78.     Notwithstanding the foregoing, Skotidakis breached the Contract by, at a minimum, failing to promptly notify WFMPL of the 2013 third-party nutritional test results as was required by Paragraph 5(c) of the Contract.

79.     As a direct and proximate result, WFMPL has been damaged in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Whole Foods prays for judgment to be entered in favor of Whole Foods against Skotidakis as follows:

A.     Ordering Skotidakis to indemnify WFMPL for the total monetary amount it paid in settlement of the Underlying Lawsuits.

B.     For reasonable expenses, including but not limited to reasonable attorneys' fees, expenses and court costs provided for under the Contract, incurred for preparation for and investigation of facts surrounding the Underlying Lawsuits and defending the Underlying Lawsuits brought by Plaintiffs.

C.     Ordering Skotidakis to indemnify WFMPL for the damages it incurred in voluntarily withdrawing the Yogurt, including without limitation the cost of facilitating the withdrawals and cost of unsold Yogurt as provided for under the Contract.

D.     For reasonable expenses including but not limited to attorneys' fees and costs incurred in bringing this Cross-Complaint to enforce its rights under the Contract as provided for under the Contract and/or applicable law.

E.     For all other damages incurred by WFMPL as a result of all of Skotidakis' breaches of Contract, in the maximum amount permitted under all applicable law.

E.      For pre- and post-judgment interest on all amounts awarded on this Cross-Complaint.

F.      For such other and further relief as this Court deems just and appropriate.

## JURY DEMAND

WFMPL hereby demands a trial by jury on all issues so triable.

DATED:  February 3, 2017                SEYFARTH SHAW LLP


                                        By: */s/ Joseph J. Orzano*
                                            Jay W. Connolly (admitted *pro hac vice*)
                                            jconnolly@seyfarth.com
                                            Joseph J. Orzano (admitted *pro hac vice*)
                                            jorzano@seyfarth.com
                                            SEYFARTH SHAW LLP
                                            560 Mission Street, 31st Floor
                                            San Francisco, California  94105
                                            Telephone:        (415) 397-2823
                                            Facsimile: (415) 397-8549

                                            John H. Hempfling II
                                            Texas Bar No. 24029609
                                            S.D. Tex. No.  28593
                                            Whole Foods Market Central Office
                                            550 Bowie Street
                                            Austin, Texas 78703
                                            Telephone: (512) 542-0213
                                            Facsimile : (512) 482-7213
                                            Email: john.hempfling@wholefoods.com

                                            Attorneys for WFM Private Label, L.P.

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of February, 2017, a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

_____*/s/ Joseph J. Orzano*_____
Joseph J. Orzano
