# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| WFM PRIVATE LABEL, L.P., | Case No.    A-14-CA-01013-SS |
| Cross-Claimant, | |
| v. | |
| 1048547 ONTARIO, INC. D/B/A SKOTIDAKIS GOAT FARM, | |
| Cross-Defendant. | |
| AND RELATED COUNTER-ACTION | |

## WFM PRIVATE LABEL, L.P.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I.    ARGUMENT. ........................................................................................................... 1

   A.   The Court Should Grant Whole Foods Summary Judgment On Its First Claim For Relief For Breach Of Contract (Failure to Indemnify). ......................................................... 1

   B.   The Court Should Grant Whole Foods Summary Judgment On Its Second Claim For Relief For Breach Of Contract (Failure to Pay Reasonable Expenses of Withdrawal). ............. 3

   C.   The Court Should Grant Whole Foods Summary Judgment On Its Third Claim For Relief For Breach Of Contract (Breach of Other Contract Provisions). ............................................... 5

       1.   SGF's Arguments Related to the 2010 and 2011 Test Results. ...................................... 5

       2.   SGF's Arguments Related to the 2013 Test Results. ...................................................... 7

   D.   The Court Should Grant Whole Foods Summary Judgment On Its Fourth Claim For Relief For Fraud By Omission. ................................................................................................... 8

   E.   The Court Should Grant Whole Foods Summary Judgment On Its Fifth Claim For Relief For Fraud By Affirmative Misrepresentation. ......................................................................... 9

   F.   The Court Should Grant Whole Foods Summary Judgment On Its Sixth Claim For Relief For Fraudulent Inducement. ...................................................................................... 12

   G.   The Court Should Grant Whole Foods Summary Judgment On Its Request for Exemplary Damages. ................................................................................................................. 13

   H.   The Court Should Grant Whole Foods Summary Judgment On SGF's Counterclaim for Breach of Contract. ................................................................................................. 14

       1.   Whole Foods Properly Terminated The Contract For Cause. ....................................... 14

       2.   Whole Foods Did Not Breach Paragraph 9 of the Contract. ........................................ 15

       3.   SGF's Claimed "Offsets" Are Baseless. ...................................................................... 17

   I.   Whole Foods' Costs of Defense Of The Underlying Lawsuits Were Reasonable And Necessary. ................................................................................................................... 18

   J.   In Any Event, Any Objection To Its Obligation to Fully Indemnify SGF Is Barred By Waiver And Estoppel. ............................................................................................... 20

   K.   Whole Foods' Attorneys' Fees and Expenses Incurred In Connection With This Action Were Reasonable And Necessary. ............................................................................... 20

II.   Conclusion. ......................................................................................................... 20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Guardian Life Ins. Co. v. Kinder*,
    663 F.Supp.2d 544 (S.D.Tex. 2009) ......................................................................18

*Lucas v. United States*,
    807 F.2d 414 (5th Cir. 1986) ...............................................................................13

*Natalie v. Barnett*,
    1998 WL 175890 (E.D.Pa. 1998) ...........................................................................4

*Quibodeaux v. Nautilus Insurance*,
    2012 WL 12919190 (E.D.Tex. 2012) ...................................................................13

*Roth v. JPMorgan Chase Bank, N.A.*,
    439 S.W.3d 508 (Tex. Ct. App. 2014) ..................................................................18

**Other Authorities**

Fed. R. Civ. P. 8(c) .......................................................................................................13

Fed. R. Evid. 803(6)....................................................................................................4, 5

Civil Local Rule 26(d) ...................................................................................................4

SGF fails to overcome the showing in the Motion that summary judgment should be entered for Whole Foods.[1]  SGF's Opposition is untethered to any relevant Contract provisions and is divorced from the record.  SGF continues to assert theories from its pleadings such as Whole Foods' purported "prior material breach" and SGF's "conditional acceptance" of Whole Foods' defense and indemnity demands, as if discovery never occurred and deposition transcripts and documents do not exist for the Court to read.

SGF next submits a declaration from its own counsel opining that Whole Foods' attorneys can only reasonably bill their time at a rate slightly higher than his own legal assistant and less than half his own.  SGF even resorts to objecting to the authenticity of its own third-party lab tests which it obtained and produced to Whole Foods.

SGF has impeded and delayed Whole Foods' attempts to vindicate it rights for years, needlessly increasing Whole Foods' costs and expenses and burdening this Court.  Its Opposition crystallizes what Whole Foods has dealt with since the Underlying Lawsuits began four years ago.

The Court should put an end to SGF's obstruction and delay, enforce the Contract as written, impose liability on SGF for its fraud, and award Whole Foods all of the relief it seeks.

## I.   ARGUMENT.

### A.   The Court Should Grant Whole Foods Summary Judgment On Its First Claim For Relief For Breach Of Contract (Failure to Indemnify).

SGF's sole argument against summary judgment on Whole Foods' first claim for relief is that its performance was excused by a prior material breach—Whole Foods' termination of the Contract, which SGF contends was "premature" and "without cause."  Opp. at 8-10.   SGF fails to overcome Whole Foods's showing that the defense and counterclaim premised on this theory is baseless.

*First*, SGF ignores the relevant Contract terms that permit Whole Foods to terminate the

---

[1] Terms are defined as in Whole Foods' Motion.

Contract at any time for any reason, with our without cause.  Contract ¶ 14; MSJ Section I.H.1-I.H.2.  Cause is only relevant to whether Paragraph 9 applies.  Contract ¶ 9; MSJ §  I.H.1-I.H.2.  SGF did not comply with the pre-requisites for seeking reimbursement under Paragraph 9.  MSJ § I.H.2.  Thus, Paragraph 9 and the issue of cause are irrelevant.

*Second*, SGF fails to show that Whole Foods lacked cause to terminate the Contract.  *See* MSJ Section I.C.  SGF asserts that its failures to perform after the termination do not establish cause before it.  Opp. at 10.  Of course, this argument ignores SGF's breaches before the termination, which SGF fails to adequately address.  *See infra* Section I.C.

*Third*, SGF takes issue with the fact that Whole Foods terminated the "entire vendor relationship," and did not continue with flavored Greek yogurt.  Opp. at 10.  SGF cites no authority to support its contention that a party may not terminate a contract until the contract is breached with respect to every product supplied pursuant to it.  Moreover, as set forth above, the Contract here allowed Whole Foods to terminate the Contract (including all SKUs supplied pursuant to it) at any time for any reason subject only to Paragraph 9, which does not apply under the undisputed facts here.[2]

*Fourth*, SGF takes issue with the content of Whole Foods' termination letter.  Opp. at 9.  Again, SGF cites no Contract provision or case law to support its suggestion that more was required.  The Contract required only written notice of termination, which SGF does not dispute it received.  Contract ¶ 14; Opp. at 9.  The Contract does not require Whole Foods to identify its termination as for cause or without cause.  Contract ¶ 14.  Instead, the Contract "deems" a termination by Whole Foods after

---

[2] In any event, the undisputed facts establish SGF breached the Contract with respect to all SKUs.  SGF admitted that it under-reported the sugar content of the fruit SKUs for the same reason that it under-reported the sugar content of the plain SKUs.  SGF used the 2010 and 2011 test results to determine the sugar content of the fruit SKUs by adding the sugar content reported in those test results—which it admitted were inaccurate—to the sugar content of the fruit.  *See* Ex.42, J. Skotidakis Depo. Tr. 68:17-70:8; Ex. 43, V. Hamelin Depo. Tr. 77:2-77:13.

SGF's breach of Contract for cause.  *Id.*  In any event, SGF knew the basis of the termination.  As set forth below in Section I.C.1, SGF even changed the sugar content disclosure of its own Skotidakis brand Greek yogurt based on the results of the testing obtained as part of Whole Foods' investigation of the Consumer Reports article.  If SGF did not know the basis for the termination or that it would be deemed for cause, it did not read the Contract.  That, of course, is no defense.

SGF's claim that its performance was excused by a prior material breach by Whole Foods is baseless and should be rejected.  SGF offers no other argument against summary judgment on Whole Foods' first claim for relief.  Accordingly, the Court should grant summary judgment for Whole Foods on its first claim for relief in the amount of at least $2,014,185.72.[3]

### B.      The Court Should Grant Whole Foods Summary Judgment On Its Second Claim For Relief For Breach Of Contract (Failure to Pay Reasonable Expenses of Withdrawal).

SGF's sole substantive argument on this claim is its "prior material breach" theory.  Opp. at 10.  This theory fails for reasons set forth above.  *See* Section I.A.

SGF also asserts that genuine issues of material fact exist as to "when the withdrawal occurred," "when SGF allegedly breached its obligation to pay these expenses," and whether the expenses were "reasonable."  Opp. at 11.  These arguments are mere gamesmanship.  As reflected on the expense reports for the two voluntary market withdrawals, and as SGF was keenly aware, Whole Foods implemented a withdrawal of the 0% Yogurt on August 19, 2014 and a withdrawal

---

[3] Since Whole Foods filed its Motion, it has incurred additional losses in at least the amount of $136,917.05, including at least an additional $97,523.53 in attorneys' fees and expenses and at least an additional $39,393.52 in ESI vendor costs.  Ex. 44; Ex. 45; Decl. of J. Connolly, ¶ 4. Much of these losses relate to activities performed prior to the filing of the Motion, including efforts to respond to SGF's discovery and deposing SGF witnesses in Canada.  Whole Foods reserves the right to seek additional losses not included in the motion and this reply due to their recency or which have not yet been incurred.  Whole Foods also reserves the right to seek its attorneys' fees after grant of summary judgment as the prevailing party in accordance with Contract ¶ 16 or applicable law.

of the 2% Yogurt on August 29, 2014.  MSJ Ex. 24, Voluntary Withdrawal Expenses; Decl. of N. Cimbala ¶¶ 7-8.[4]   SGF concedes it has not reimbursed Whole Foods and thus it has breached the Contract and its breach is ongoing.  Additionally, Whole Foods expenses were reasonable.  As the expense documents indicate, the expenses reflect product credits for units Whole Foods had to remove from the market—which are expressly included as recoverable expenses under the Contract—plus a reasonable $1,000 fee for processing both nationwide withdrawals involving thousands of units.  Decl. of N. Cimbala ¶¶ 10-12.  SGF produced no contrary evidence.  Nothing more is required from Whole Foods to demonstrate its right to recovery.

SGF also attempts to avoid its contractual obligations by evidentiary objections, each of which is meritless.  SGF objects that the test results submitted by Whole Foods in support of its Motion (MSJ Exhibit 20) are not authentic and are inadmissible hearsay.  Opp. at 11.   The test results are authentic[5] and admissible under the business records exception.  *See* Decl. of E. Riggs, ¶¶ 18-23; Fed. R. Evid. 803(6) (the business records exception); *Natalie v. Barnett*, 1998 WL 175890, at *2 (E.D.Pa. 1998) (lab test results admissible business records).[6]  The test results are also admissible non-hearsay to show why Whole Foods terminated the Contract and withdrew the Yogurt.  In any event, the test results are not necessary to establish Whole Foods' right to recover

---

[4] Mr. Cimbala submitted a virtually identical declaration and was deposed in the Underlying Lawsuits.  *See In re Whole Foods Market Sales Practices Litigation*, 14-mc-02588-SS Dkt. 15, Attachment 2, Affidavit of N. Cimbala.  Whole Foods identified him in its Initial Disclosures.

[5] SGF even objects to the authenticity of the Maxxam test results, which it obtained and produced to Whole Foods. In addition to being frivolous, SGF's authenticity objection is barred by Local Rule Civ-26(d) (prohibiting party from objecting to the authenticity of documents the party produces unless objection made within 14 days of notice of intent to use the document).

[6] Ms. Riggs submitted a virtually identical declaration and was deposed in the Underlying Lawsuits.  *See In re Whole Foods Market Sales Practices Litigation*, 14-mc-02588-SS Dkt. 15, Attachment 3, Affidavit of E. Castro. Whole Foods identified Ms. Riggs in its Initial Disclosures.

its withdrawal expenses.  SGF's admissions as to the sugar content of the Yogurt are sufficient to trigger SGF's reimbursement obligations.  *See* Contract ¶ 6(b); MSJ § I.C; MSJ Reply § I.C.1.

SGF also objects that Whole Foods' expense documents are not authentic and inadmissible hearsay.  Opp. at 11.  However, Whole Foods' withdrawal expense documents are also authentic and admissible as business records.  Decl. of N. Cimbala ¶¶ 10-16, Fed. R. Evid. 803(6).

SGF's arguments fail to overcome Whole Foods' showing in the Motion.  Accordingly, the Court should grant summary judgment for Whole Foods on its second claim for relief.

**C.    The Court Should Grant Whole Foods Summary Judgment On Its Third Claim For Relief For Breach Of Contract (Breach of Other Contract Provisions).**

SGF fails to demonstrate it did not breach other Contract provisions.

**1.    SGF's Arguments Related to the 2010 and 2011 Test Results.**

*First*, SGF argues that Whole Foods failed to "adduce[]…evidence that SGF should have questioned the work of Maxxam or the accuracy of the 2010 and 2011 test results."  Opp. at 12. SGF cites no knowledge or intent requirement to establish a breach of contract, and there is none.

*Second*, SGF argues that its "allegation" against Maxxam that the 2010 and 2011 test results were inaccurate and under-reported the sugar content of the Yogurt does not "retroactively" establish SGF breached the Contract before Whole Foods terminated it.  Opp. at 12.   This is more misdirection.  SGF admitted in this litigation that the 2010 and 2011 test results were inaccurate and under-reported the sugar content of the Yogurt.  *See* MSJ Section I.C. That admission, regardless of timing, establishes several pre-termination breaches by SGF.  *See id.*

Again, SGF's admissions are clear and dispositive.  SGF sued its own testing company on the ground that the test results upon which it based its certifications to Whole Foods and the Yogurt labels were inaccurate and under-reported the Yogurt's sugar content.  MSJ at 3, MSJ Ex. 9.  SGF adopted those allegations as true in this litigation. MSJ Ex. 20, J. Skotidakis Depo. 91:15-91:23; Ex. 46, J. Plagakis Depo. Tr. 44:6-44:22.  SGF further admitted that many additional test results

indicated the sugar content of the Yogurt was higher than SGF certified to Whole Foods and that was disclosed on the label. *See* Ex. 43, V. Hamelin Depo. Tr. 82:9-85:15 (admitting the September 2013 test results indicated the sugar content disclosed on the Yogurt's label was incorrect); Ex. 43, V. Hamelin Depo. Tr. 85:18-87:24 (admitting that the August 7, 2014, August 11, 2014, and August 17, 2014 Maxxam test results indicated the sugar content of the Yogurt was higher than disclosed on the label); Ex. 46, J. Plagakis Depo. Tr. 59:18-60:14 (same).  SGF also admitted that it increased the sugar content disclosure on its own plain Greek yogurt—which is "the same in terms of nutritional content" as Whole Foods' Yogurt—after the Consumer Reports article.  SGF made the change based on the same testing Whole Foods considered in making its decisions to withdraw the Yogurt and terminate the Contract. Ex. 42, J. Skotidakis Depo. Tr. 141:20-141:24; Ex.43, V. Hamelin Depo. Tr. 91:1-93:5; Ex.46, J. Plagakis Depo. Tr. 71:8-74:12; Opp. at 4.

As explained in the Motion, those admissions unambiguously establish SGF's breach of numerous Contract provisions.  Again, SGF agreed to provide information in support of the labels of the Yogurt, including a nutrition panel in compliance with all applicable laws.  Contract, ¶ 4.  SGF also represented, warranted, and covenanted in the Contract that the Yogurt (including packaging and labels):  (1) would be merchantable and otherwise free from defects at the time of delivery,  Contract, ¶ 2(a)(i)(A); (2) would not include any illegal, misleading or untrue label claim or fail to include a required label claim, Contract, ¶ 2(a)(i)(D); (3) would not otherwise be adulterated or misbranded within the meaning of applicable law,  Contract, ¶ 2(a)(i)(D); and (4) would comply with all applicable laws. Contract, ¶ 2(a)(i)(D).  In addition, SGF certified the accuracy of the sugar content of the Yogurt in the Technical Specifications Sheets, which are incorporated by reference into the Contract.  *See* Contract ¶ 4 (requiring SGF to approve the accuracy of Technical Specifications Sheets and incorporating the certified Technical Specifications Sheets into the Contract); MSJ Ex. 6, Certified

Technical Specifications Sheets (including SGF certifications of the accuracy of the sugar content of the Yogurt). None of these obligations incorporate an intent requirement.

Summary judgment should be awarded Whole Foods on its third claim for relief.

### 2. SGF's Arguments Related to the 2013 Test Results.

SGF contends that "Whole Foods has not shown" SGF's failure to disclose the September 2013 test results was a breach of contract. Opp. at 12. SGF asserts a series of arguments in support of this contention, all of which are precluded by unambiguous Contract terms and undisputed facts.

SGF first argues it was not required to disclose the test results because "there is no evidence that the September 2013 test was initiated or performed at the request of WFMPL or pursuant to the Vendor Agreement." *Id.* No such limitation exists in the Contract. In the third sentence of Paragraph 5(c), SGF agreed to "notify WFMPL promptly if any Product Test performed according to this Agreement *or otherwise*…indicates the Product may not comply with Product Specifications, this Agreement or any Applicable Law…." Contract ¶ 5(c) (emphasis added). SGF contends that "Product Tests" includes only tests "performed on the first production run and as provided for in the Product's Technical Specifications" and therefore it need not have notified Whole Foods of test results not performed at Whole Foods' request of pursuant to the Contract. Opp. at 13 n. 5. "Product Tests" could not be limited to only tests performed at Whole Foods' request or pursuant to the Contract if SGF also broadly agreed to notify Whole Foods of "Products Tests" performed according to the Contract *or otherwise*. It also makes no sense that the Parties would carve out adverse test results simply because SGF ordered them on its own, and the Contract contains no such exception.

SGF's proffered interpretation is not only unreasonable, but inconsistent with SGF's own witnesses' understanding. SGF witnesses understood and acknowledged SGF should have disclosed the test results to Whole Foods. John Plagakis—who signed the Contract for SGF—admitted multiple times that SGF's failure to provide Whole Foods the September 2013 test results was an "oversight."

Ex. 46, Plagakis Depo. Tr. 93:5-94:9.  Veronique Hamelin, SGF's head of quality assurance, admitted that the September 2013 test results were applicable to *Whole Foods* Yogurt and that the September 2013 test results indicated the sugar content of *Whole Foods'* Yogurt was higher than disclosed on the label.  Ex. 43, V. Hamelin Depo. Tr. 82:9-85:15.  Moreover, SGF insists elsewhere in the Opposition that its plain Greek yogurt nutritional tests are really test results for all products which use SGF's plain Greek yogurt, including Whole Foods'.  Opp. at 4.  According to SGF, all of its plain Greek yogurt tests are mere "white-mass tests" that contain the same nutritional analysis regardless of customer.  *Id.*

SGF also argues that its failure to produce the September 2013 test results was not a breach of Contract because Whole Foods did not ask SGF to produce the test result.  *Id.*  Again, SGF points to no Contract provision that imposes such a requirement on Whole Foods.  SGF's argument is also inconsistent with the understanding of its own witnesses as set forth immediately above.

Summary judgment should be awarded Whole Foods on its third claim for relief.

### D.     The Court Should Grant Whole Foods Summary Judgment On Its Fourth Claim For Relief For Fraud By Omission.

SGF asserts a series of meritless and largely duplicative arguments.

*First*, SGF argues it had no duty to disclose the September 2013 test results.  SGF, however, merely reiterates its earlier argument that the Contract did not require it to disclose the test results, which fails for the reasons set forth in Section I.C.2. Opp.  at 13-14.

*Second*, SGF argues there is insufficient evidence of its intent.  SGF asserts, contrary to its admissions in discovery, that the 2013 test results had nothing to do with the Yogurt and thus nothing can be inferred from SGF's repeated failure to disclose them.  Opp. at 14.  As explained above, SGF's witnesses testified that the test results applied to the Yogurt and indicated the Yogurt's sugar content was higher than disclosed on the label.  *See* Ex 46, J. Plagakis Depo. Tr. 91:1-94:9 (admitting September 2013 test results were relevant to Whole Foods' November 27,

2013 inquiry regarding the Yogurt's sugar content at MSJ Ex. 13 p. 3 and attributing SGF's failure to provide the test results in response to Whole Foods' inquiry as an "oversight"); *id*. at 94:18-97:23 (similarly referring to SGF's failure to provide the test results in response to Whole Foods July 10, 2014 inquiry as an "oversight").

Summary judgment should be awarded for Whole Foods on its fourth claim for relief.

### E.  The Court Should Grant Whole Foods Summary Judgment On Its Fifth Claim For Relief For Fraud By Affirmative Misrepresentation.

SGF does not dispute the elements of the claim nor that promises of future performance can be material misrepresentations for fraud when made with the intent not to perform.  Opp. at 15-16.  SGF also does not contest that circumstantial evidence is sufficient to show its intent, even slight circumstantial evidence of fraud where, as here, there is a breach of promise to perform.  *Id.* SGF also does not contest that its subsequent denial of an obligation to perform and its lack of even a pretense of performance constitute circumstantial evidence of its fraudulent intent.  *Id.* Instead, SGF makes a series of unavailing arguments why its intent should not be inferred.  *Id.*

*First*, SGF argues its first acceptance of Whole Foods' demand for defense and indemnity does not evidence its fraudulent intent because it was conditioned on "confirmation that SGF could secure insurance coverage."  Opp. at 15.[7]  SGF's proffered interpretation is not supported by the substance of the letter and is inconstant with other undisputed facts.  In the letter, SGF clearly "confirm[ed] that pursuant to s. 11(a)(iv) of the Agreement that Skotidakis Goat Farm intends to indemnify WFM in respect of 'Losses', as defined in the Agreement, arising from such Claims, as the Claims appear to pertain to an alleged failure of a Product to comply with a claim or representation on its label."  Ex. 26 at 1.  SGF did then inform Whole Foods that its insurer has

---

[7] To the extent SGF made its acceptance conditional on insurance coverage, it is yet another breach of Contract.  Contract ¶ 11(d) (requiring SGF to defend and indemnify Whole Foods regardless of insurance coverage).

not yet made a coverage decision but only to advise Whole Foods that it could not yet give notice of coverage acceptance under Paragraph 11(d).  SGF then reassures Whole Foods it will "pay WFM's reasonable expenses as they are incurred including but not limited to reasonable attorneys' fees, expenses, and court costs associated with the claim, pursuant to s. 11(d) of the Agreement" until it can provide notice that its insurer has accepted coverage.  *Id.*  The only reasonable reading of the letter is that SGF acknowledged its obligation to fully defend and indemnify Whole Foods, expected insurance to cover the claims, and reassured Whole Foods that SGF would pay expenses until its insurer accepted coverage (which it never did).

In any event, SGF subsequently accepted Whole Foods demands for defense and indemnity without mention of insurance long after coverage was denied, including in December 2014 and May 2015.  MSJ Ex. 27; MSJ Ex. 32 at 1, 5.  SGF made its first payment to Whole Foods long after its insurer denied coverage, including payments in May 2015 and May 2016.  These facts are totally inconsistent with its position now that it "conditionally accepted" Whole Foods demands. Thus, SGF's argument does not aid it here.  If anything, it is further evidence of SGF's fraud.

*Second*, SGF argues that the Court cannot infer SGF acted with fraudulent intent because it made two payments totaling $75,000 over the course of several years.  Opp. at 16.  As set forth above, SGF made a payment in May 2015 and a payment in May 2016, long after SGF promised to fully defend and indemnify Whole Foods and only under intense pressure.  In both instances, SGF did just enough to keep its fraud going:  the payments induced Whole Foods to continue to pay for a vigorous defense of the Underlying Lawsuits without suing SGF in the United States, while SGF continued to invest in the expansion of its business in Canada.  SGF's payments are not evidence of lack of fraud, they were part of the fraud and are further evidence of SGF's intent.

*Third*, SGF argues its fraudulent intent cannot be inferred because it did not know its insurer would deny coverage.  Opp. at 16.  As set forth above, SGF did not "condition" its

acceptance on insurance coverage.  Moreover, as further set forth above, SGF acknowledged its obligation to fully defend and indemnify Whole Foods long after SGF's insurer denied coverage. SGF's lack of knowledge regarding its insurance coverage is irrelevant.

*Fourth*, SGF argues its fraudulent intent cannot be inferred because it did not know the full size of the claims when it promised to perform.  This argument also ignores the undisputed facts. SGF continued to promise to perform long after the Underlying Lawsuits were filed, including nearly two years later in May 2016.  SGF had no reasonable basis to believe Whole Foods' litigation expenses would be capped anywhere near the $75,000 it paid.   Indeed, as set forth in Section I.I., SGF acknowledges Whole Foods' expenses were reasonable given the claims faced because it does not object to the amount of time spent or work performed in defense of the Underlying Lawsuits.  SGF only baselessly quibbles with the rates for that work.  Even if the Court applied SGF's proposed rates, the amount incurred by Whole Foods would vastly exceed the amount SGF paid.  Moreover, as set forth in Section I.J, SGF concedes it never objected to the reasonableness of the expenses as they were incurred.  SGF's argument is without merit.

*Fifth*, SGF attempts to distance itself from its 2016 boast that it recently completed a "significant investment and expansion" of its production facilities in Canada.  SGF vaguely represents to this Court that the investment "involved such things as expanding the building and adding or upgrading the equipment from time to time."  Opp. at 16.  Even SGF's vague characterization here concedes it invested and expanded—conduct inconsistent with financial hardship—while it claimed it could not pay Whole Foods more than $75,000.  Moreover, if SGF's financial condition were as dire as it claims, SGF surely would have produced evidence to support it.  Instead, tellingly, SGF adamantly refused to provide a shred of evidence of its financial condition.  *See* MSJ Ex. 8, SGF Depo. Tr. 150:12-153:4, 153:5-165:18; MSJ Ex. 36.

*Sixth*, SGF claims there is no evidence of Whole Foods' reliance on SGF's

misrepresentations.  Opp. at 16.  SGF contends Whole Foods must prove it would not have proceeded to incur attorneys' fees and expenses had it known SGF had no intent to perform.  *Id.* To adopt SGF's reasoning would render the law of fraud a nullity in these circumstances as any indemnitor could fraudulently promise to perform safe in the knowledge the indemnitee will defend itself.  SGF cites no authority to support its untenable characterization of the law.  In any event, the purpose of SGF's fraudulent promises was to induce Whole Foods to fund the defense while deferring suit against SGF, while SGF invested in and expanded its business.  SGF's fraudulent promises accomplished those goals.  Thus, at a minimum, Whole Foods relied on SGF's promises in maintaining the *status quo* and deferring action against SGF.  This needlessly extended the dispute, and increased Whole Foods' expenses.

The Court should grant Whole Foods summary judgment on its fifth claim for relief.

**F.   The Court Should Grant Whole Foods Summary Judgment On Its Sixth Claim For Relief For Fraudulent Inducement.**

SGF offers a series of meritless arguments divorced from the record and applicable law.

*First*, SGF again claims there is inadequate evidence the 2010 and 2011 test results were inaccurate.  Opp. at 17.  This argument is precluded by SGF's admissions.  *See* Section I.C.1.

*Second*, SGF reiterates its argument that there is insufficient evidence that it knew the 2010 and 2011 test results were inaccurate.  Opp. at 17.  SGF contention is not only irrelevant to Whole Foods' contract claims as explained above but also unsupported by the facts.  SGF's sole business is supplying dairy products including Greek yogurt products to companies like Whole Foods and for sale under its own Skotidakis brand.  Opp., Ex. A, J. Skotidakis Decl. ¶ 2.  It supplied major grocers with dairy products, including Whole Foods and Loblaws.  Ex. 42, J. Skotidakis Depo. Tr. 135:17-135:24.  Emails produced in discovery demonstrate SGF's detailed knowledge of testing methods applicable to nutritional content of dairy products.  Indeed, shortly after the Consumer

Reports article, SGF debated whether to be "proactive" and test for sugars it did not include in its 2010 and 2011 testing.  *See* MSJ Ex. 22, July 30, 2014 Email from V. Hamelin to J. Skotidakis *et al*.  The test results upon which SGF relied to certify the accuracy of the Yogurt's sugar content were significantly lower than SGF's competitors.  MSJ Ex. 17.  At a minimum, SGF certified the sugar content recklessly, which is all that is required.

The Court should enter summary judgment for Whole Foods on its sixth claim for relief.

### G.    The Court Should Grant Whole Foods Summary Judgment On Its Request for Exemplary Damages.

*First*, SGF argues Whole Foods waived its right to recover exemplary damages.  SGF did not plead this affirmative defense nor raise it in discovery.  *See* MSJ Ex. 2, SGF Answer. Accordingly, SGF waived it.  *Quibodeaux v. Nautilus Insurance*, 2012 WL 12919190, at *3 (E.D.Tex. 2012) (waiver is an affirmative defense); Fed. R. Civ. P. 8(c) (requiring affirmative defenses to be set forth in a  responsive pleading); *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986) (a party's failure to raise an affirmative defense in its first responsive pleading waives the defense).  By raising the defense at this late date, SGF precluded Whole Foods from taking discovery on the issue and thereby prejudices Whole Foods.  SGF's argument should be rejected.

*Second*, SGF concedes a showing of fraud is sufficient to impose exemplary damages, but merely incorporates its prior arguments that it did not engage in fraud.  Opp. at 19.  Those arguments are inadequate for the reasons set forth above in Sections I.D-I.F.

*Third*, SGF concedes gross negligence is sufficient to impose exemplary damages but complains that Whole Foods has not "shown what conduct" satisfies that standard.  Opp. at 19. Whole Foods has thoroughly set forth facts establishing SGF's fraud and highlighted the fact that, even if Court finds those acts do not rise to the level of fraud, it can still award exemplary damages based on SGF's gross negligence.  MSJ at Sections I.D-I.G.  Nothing more is required.

*Finally*, SGF simply asserts that Whole Foods has not submitted sufficient evidence of SGF's malice.  Opp. at 19.  SGF fraudulently induced Whole Foods to enter into the Contract, Section I.F., SGF fraudulently concealed a test result indicating the sugar content of the Yogurt was higher than its previously certified and was disclosed on the label, Section I.D, and SGF fraudulently misrepresented its intent to fully defend and indemnify Whole Foods when it was sued by consumers for under-reporting the sugar content of the Yogurt, Section I.E.  While malice is not required, SGF's years-long fraudulent conduct rises far beyond a good faith failure to indemnify a customer due to financial hardship, and meets the threshold for malice.

The Court can and should award Whole Foods exemplary damages.

### H.   The Court Should Grant Whole Foods Summary Judgment On SGF's Counterclaim for Breach of Contract.

#### 1.   Whole Foods Properly Terminated The Contract For Cause.

SGF relies on the same meritless arguments it offers in its attempt to avoid liability for breach of contract for failure to indemnify, which are addressed in Section I.A. and I.C., above.

*First*, SGF again quibbles with the amount of detail in the termination letter.  Opp. at 22. And SGF again cites no Contract provision or authority to support its contention that the termination letter was somehow inadequate.  As explained in Section I.A. above the Contract required nothing more.  SGF's argument should again be rejected.

*Second*, SGF again points to its post-termination failures to perform as not supplying cause. Opp. at 22.  Again, this argument does not address the numerous breaches of Contract established by undisputed facts *before* the termination.  *See* Section I.A.  And SGF fails to refute the undisputed facts establishing the many breaches of Contract before the termination, *see* Section I.C, or SGF fraud which Whole Foods discovered before the termination, *see* Section I.D.

*Third*, SGF reiterates arguments related to the 2010 and 2011 test results.  Opp. at 22.  SGF argues Whole Foods has not demonstrated SGF knew of the inaccuracy of the results at the time

of its certifications, despite the fact that SGF's knowledge is irrelevant to Whole Foods' contract claims.  And SGF again argues that its admission after the termination does not "retroactively" establish a breach of contract, despite the fact that SGF's admission not its timing matters.

*Fourth*, SGF reiterates its arguments related to the 2013 test results.  Opp. at 22.   SGF again argues it was not required to disclose the test results because they were not performed pursuant to the Contract, despite the fact that the Contract required SGF to notify Whole Foods of test results *not* performed pursuant to the Contract and SGF admitted the test results related to Whole Foods' Yogurt *and* indicated the Whole Foods' Yogurt's label was inaccurate.  Section I.C.2.  SGF again also argues it was not required to disclose the test results because Whole Foods did not ask for them, despite there being no such requirement in the Contract.  *Id.*

In any event, SGF has no claim because it relies on the fundamental misconception that cause was required to terminate the Contract and that the termination in this case could somehow be "premature."  Again, as set forth above in Section I.A., Whole Foods could terminate the Contract at any time for any reason.  And cause is only relevant to whether the reimbursement provisions of Paragraph 9 apply.  Since SGF did not comply with the pre-requisites to reimbursement under Paragraph 9, Paragraph 9 and the issue of cause are irrelevant.

### 2.    Whole Foods Did Not Breach Paragraph 9 of the Contract.

SGF concedes Whole Foods could terminate the Contract at any time, subject only to Paragraph 9.  SGF further concedes that it had no finished goods when Whole Foods terminated the Contract.  Opp. at 23.  Thus, even if the Court were to somehow find no cause existed, it need only consider whether SGF complied with the contractual pre-requisites for reimbursement of unused packaging and labeling inventory—which its Opposition demonstrates it plainly did not.

*First*, SGF admits it did not comply with the pre-requisites for the reimbursement it seeks.  Opp. at 24.  SGF acknowledges, as if an ancillary point, that it "did not get specific approvals or

issue specific purchase orders for packaging and labeling for every individual order of yogurt products." Opp. at 24. But this is exactly what the Contract requires for reimbursement. Contract ¶ 9. SGF's admission in its Opposition alone requires summary judgment for Whole Foods.

*Second*, SGF points the Court to pre-production *design* approvals, not specific print run approvals required for reimbursement. The evidence cited by SGF is wholly unrelated to Paragraph 9. Opp. at 23-24 (citing John Skotidakis' and John Plagakis' testimony regarding pre-production design approvals); Opp. at Exhibit G (attaching pre-production design approvals). Instead, the evidence relates to Paragraph 4. Contract ¶ 4 (requiring SGF to obtain Whole Foods approval of label designs as part of the product development process). SGF has produced no evidence it complied with Paragraph 9 and affirmatively admits it did not comply.

*Third*, SGF cites testimony of Kosta Skotidakis that "we had to hold packaging for them to fill orders." Opp. at 23. Of course, the issue is not whether SGF needed packaging to fill orders—of course it did. The issue is whether SGF complied with the contractual requirements for reimbursement for that packaging in connection with the print run that produced them. Again, SGF cites no evidence that it complied with those requirements and admits that it did not comply.

*Fourth*, SGF asserts that the Court can ignore the Contract and "infer" that "SGF had all the necessary approvals and purchase orders" because it continued to push Yogurt through the chain of distribution during the voluntary withdrawal. Opp. at 24. Whether SGF filled an order is inapposite. The question is whether SGF obtained the packaging used to fulfill order consistent with the requirements of Paragraph 9, and the undisputed facts establish SGF did not.

*Fifth*, SGF argues that its own failure to comply with the pre-requisites for reimbursement under Paragraph 9 during the course of the Contract absolved it of the requirement to comply when Whole Foods terminated the Contract. Opp. at 24. SGF cites no authority to support its contention, nor can it. The Contract did not preclude SGF from printing labels and packaging to fulfill orders

after Whole Foods approved the design under Paragraph 4.  SGF was free to and did assume the risk of absorbing the cost of unused labeling and packaging upon termination by not complying with Paragraph 9.  Whole Foods had no obligation or reason to insist SGF comply.

Summary judgment is appropriate for Whole Foods on SGF's counterclaim.

### 3.    SGF's Claimed "Offsets" Are Baseless.

*First*, SGF fails to establish that its demand letter and the chart it was unable to explain constitute sufficient competent evidence of the existence and amount of its claimed "offsets." Instead, it merely insists, without citation or explanation, that it is so.   Opp. at 24.

*Second*, SGF argues that it claims for lost profits are not speculative because Whole Foods "cannot seriously dispute…that SGF lost a substantial stream of income when its vendor relationship with WFMPL ended."  Opp. at 24.  Even if true, it does not make the amount of SGF's claimed lost profits any less speculative.

*Third*, SGF admits its designated representative on the topic could not explain its lost profits calculations with any precision, but argues the Court should simply ignore it.  Opp. at 25. SGF provides no authority for this proposition and there is none.  SGF must meet the applicable evidentiary burden to avoid summary judgment and it admits it failed to do so.

*Fourth*, SGF cites inapposite testimony of the existence of unused packaging and the need for packaging to fill orders.  Opp. at 25. This testimony is not relevant because the Contract sets forth when SGF may be reimbursed for unused packaging and, to the extent those provisions apply, SGF failed to comply with the prerequisites for reimbursement.  *See* Section I.H.2.

*Fifth*, SGF claims the testimony of Kosta Skotidakis that SGF incurred penalties from suppliers coupled with the chart are sufficient competent evidence of the existence and amount of penalties SGF incurred.  Opp. at 25.  Again, SGF merely insists it is so.  SGF's "evidence" falls far short of what is required to avoid summary judgment.

17

*Sixth*, SGF again insists that the testimony of Kosta Skotidakis that SGF "added up unpaid invoices" to claim overdue receivables and "confirmed there were unauthorized deductions" from "payment documents for the yogurt" sufficiently establish the existence and amount of damages. SGF had no right to recover amounts for withdrawn yogurt in any event, particularly here where SGF admits it was mislabeled.  Nor has SGF provided any evidence of a right to reimbursement for any such claimed "unauthorized deduction."  Again, more is required.

SGF does not address its claim to attorneys' fees, for which it has produced no evidence.

The Court should award summary judgment for Whole Foods on its "offsets" claims.

I.      **Whole Foods' Costs of Defense Of The Underlying Lawsuits Were Reasonable And Necessary.**

*First*, SGF fails to dispute it waived, and is estopped from asserting, any objection to the reasonableness of Whole Foods costs of defense and therefore concedes the argument.

*Second*, SGF suggests that summary judgment can never be granted as to fees and expenses incurred as damages.  Opp. at 18.  Case law is clear that "[a]n attorney's affidavit constitutes expert testimony that will support an award of attorney's fees in a summary judgment proceeding."  *See Roth v. JPMorgan Chase Bank, N.A.*, 439 S.W.3d 508, 514 (Tex. Ct. App.2014) (citing *Haden v. David J. Sacks, P.C.*, 332 S.W.3d 503, 512 (Tex. Ct. App.2009)).  And "[o]nce the presumption of reasonableness attaches, it can only be rebutted by competent evidence." *Guardian Life Ins. Co. v. Kinder*, 663 F.Supp.2d 544, 560 (S.D.Tex. 2009).

*Third*, SGF claims that the declaration of Mr. Weiland is competent evidence sufficient to create a genuine issue of material fact.  Opp. at 18.  To the contrary, Mr. Weiland's declaration is procedurally deficient and should be stricken for the reasons set forth in Whole Foods' accompanying Motion to Strike.   Mr. Weiland's declaration is also objectionable on evidentiary

grounds.  *See* Objection to C. Wieland Decl.  As result, SGF is left with no competent evidence upon which to rebut Whole Foods' evidence.

*Fourth*, even if the Court considers Mr. Weiland's declaration, SGF challenges only the *rates* , not the tasks or time spent.  Thus, at a minimum, SGF has conceded the reasonableness and necessity of those issues and partial summary judgment on them is warranted.

*Fifth,* Mr. Weiland appears to take issue, without analysis, with the fact that Seyfarth Shaw LLP used a blended rate and discounted hourly rates at different times.  The rate structures changed as the nature of the litigation changed and depended on whether more or less partner time was anticipated.  Decl. of J. Connolly in Support of Reply ¶¶ 6-8.  In any event, the average hourly rate for the invoices in which Seyfarth Shaw LLP billed its attorneys at discounted hourly rates was $463.44, prior to the 10% discount, nearly identical to the $465 blended rate.  *Id.*  at ¶ 9.  Thus, whether Seyfarth Shaw LLP used a blended a rate or hourly rates ultimately made little difference.

*Sixth*, the 2015 Hourly Fact sheet establishes Whole Foods' rates were reasonable.  Mr. Weiland averages the reported median hourly rate for an out-of-state "consumer" attorney ($250) and an out-of-state "commercial litigation" attorney ($320) to arrive at a suggested rate of "$275-$300 per hour."  The median for out-of-state consumer attorneys upon which Mr. Weiland relies is based on the responses of *nine* attorneys.  Fact Sheet at 6.  The median for out-of-state commercial litigation attorneys upon which Mr. Weiland relies is based on the responses of *seventy-seven* attorneys.  *Id.* at 7.  Those issues aside, the principal driver of hourly rates in the 2015 Hourly Fact Sheet is not practice area but firm size.

A review of rates by firm size reveals why Mr. Weiland ignored them.  The Fact Sheet reports that the *median* hourly rate for out-of-state attorneys in firms in Seyfarth Shaw's size category was $465 an hour, the standard rate billed by Seyfarth Shaw.  Fact Sheet at 13.  While Mr. Weiland implies out of state rates are significantly higher than local rates, the 2015 Fact Sheet

reveals the opposite.  The median hourly rate reported by attorneys in Austin at firms in Seyfarth

Shaw's size category was $459, virtually identical to Seyfarth Shaw's rates.  *Id.* at 13.  Thus, the

Fact Sheet establishes the rates Whole Foods seeks to recover are reasonable.

 *Seventh*, the rates charged by Seyfarth Shaw are consistent with the opinion Mr. Wieland

offered in 2015 to recover his own fees.  Then, Mr. Weiland swore that he could have charged

more than $600 hour for his time, more than $400 an hour for Mr. Hawkins' time, and more than

$200 an hour for the time of his legal assistant.  *See* Ex. 47, Decl. of C. Weiland in *Ostos v. Vega*,

N.D. Cal. Case. No. 14-cv-03935.  In contrast to this case, Mr. Weiland's testimony there was

consistent with the Fact Sheet.[8]  Mr. Weiland's opinion in this case is baseless and not competent

evidence sufficient to create a genuine issue of material fact.

 Accordingly, even if SGF could overcome waiver and estoppel doctrine, the Court should

find Whole Foods' costs of defense were reasonable and necessary.

 **J.** **In Any Event, Any Objection To Its Obligation to Fully Indemnify SGF Is Barred By Waiver And Estoppel.**

 SGF ignores and thus concedes that its belated objection to Whole Foods' costs of defense

(and its denial of an obligation to fully indemnify Whole Foods) is barred by waiver and estoppel.

 **K.** **Whole Foods' Attorneys' Fees and Expenses Incurred In Connection With This Action Were Reasonable And Necessary.**

 SGF ignores and thus concedes that Whole Foods' afees and expenses incurred to date in

connection with this action were reasonable and necessary and recoverable by Whole Foods.

**II.** **CONCLUSION.**

 Whole Foods respectfully requests the Court grant its Motion.

---

[8] To put it in perspective, Mr. Weiland claims Seyfarth Shaw LLP may only charge a rate more than $300 less an hour than Mr. Weiland, more than $100 less than Mr. Hawkins, and only approximately $75 to $100 more an hour than Mr. Weiland's legal assistant.

DATED:  May 24, 2018                    SEYFARTH SHAW LLP

                                        By:  *Joseph J. Orzano*
                                        _____

                                        Jay W. Connolly (admitted *pro hac vice*)
                                        jconnolly@seyfarth.com
                                        Joseph J. Orzano (admitted *pro hac vice*)
                                        jorzano@seyfarth.com
                                        SEYFARTH SHAW LLP
                                        560 Mission Street, 31st Floor
                                        San Francisco, California  94105
                                        Telephone:   (415) 397-2823
                                        Facsimile:     (415) 397-8549

                                        John H. Hempfling II
                                        Texas Bar No. 24029609
                                        S.D. Tex. No.  28593
                                        Whole Foods Market Central Office
                                        550 Bowie Street
                                        Austin, Texas 78703
                                        Telephone: (512) 542-0213
                                        Facsimile : (512) 482-7213
                                        Email: john.hempfling@wholefoods.com

                                        *Attorneys for WFM Private Label, L.P.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of May, 2018, a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Joseph J. Orzano*
Joseph J. Orzano

46508094v.1