FILED
2018 JUN 18 PM 3:31

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

WFM PRIVATE LABLE, L.P.,
    Cross-Claimant,

-vs-

1048547 ONTARIO, INC. d/b/a
SKOTIDAKIS GOAT FARM,
    Cross-Defendant.

CAUSE NO.:
A-14-CV-01013-SS

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Cross-Claimant WFM Private Label, L.P. (Whole Foods)' Motion for Summary Judgment [#70], Cross-Defendant 1048547 Ontario, Inc. d/b/a Skotidakis Goat Farm (SGF)'s Response [#77] in opposition, and Whole Foods' Reply [#79] thereto.[1] Having considered the case file and the applicable law, the Court enters the following opinion and order.

### Background

This is a contract dispute case. Whole Foods contracted with SGF to supply Greek yogurt for sale under the Whole Foods Market 365 Everyday Value private label. Some yogurt contained higher sugar content than disclosed on the product labels, resulting in a product withdrawal, numerous consumer lawsuits, and other expenses. Whole Foods and SGF dispute liability under their contract.

In 2012, Whole Foods and SGF executed a vendor agreement in which SGF agreed to supply Whole Foods various plain and flavored Greek yogurt products. Mot. Summ. J. [#70-3]

---

[1] Whole Foods' reply includes two separate motions incorrectly filed as exhibits. *See* Reply [#79-10] Objections to Skotidakis Decl.; Reply [#79-12] Mot. to Strike Weiland Aff. Pursuant to the Court's Administrative Policies and Procedures for Electronic Filing, each filing must consist of one pleading. The objections raised to the declaration of Skotidakis are deemed irrelevant in light of the rulings in this Order. Whole Foods' motion to strike the affidavit of Weiland is DENIED without prejudice for re-urging before trial.



Ex. 3 (Vendor Agreement). SGF provided nutritional information for the yogurt. Resp. [#77] at 3. In doing so, SGF relied on 2010 and 2011 nutritional tests performed by Maxxam Analytics International Corporation (Maxxam), a third-party laboratory company based in Canada. *See id*; Mot. Summ. J. [#70-7] Ex. 7 (SGF Specifications E-mail). SGF reviewed and approved nutritional information before the products were sold. *See* Mot. Summ. J. [#70-6] Ex. 6 (Technical Specifications).

In late September 2013, SGF received updated test results from Maxxam for several of its yogurt products. Resp. [#77] at 4–5. One of the products tested—the 0% plain yogurt—was also a product SGF supplied to Whole Foods. *See id.* The new Maxxam test results reflected higher sugar content than the previous test results relied upon for product labeling. *Compare* Mot. Summ. J. [#70-12] Ex. 12 (SGF Consumer Reports E-mail) at 7 (indicating 1.8 grams of total sugars per 100 grams of 0% plain yogurt), *with* SGF Specifications E-mail at 7 (indicating 1.0 grams of total sugars per 100 grams of 0% plain yogurt). SGF did not notify Whole Foods of the new test results at the time. Resp. [#77] at 4.

Shortly thereafter, in early November 2013, Whole Foods contacted SGF with a customer inquiry regarding nutritional information of its plain yogurt products. *See* Mot. Summ. J. [#70-13] Ex. 13 (Customer Inquiry E-mail). The customer asked how the sugar content of the Whole Foods Market 365 Everyday Value private label plain yogurt was "significantly lower" than other Greek yogurt brands. *Id.* SGF assisted Whole Foods in responding to this and other customer inquiries, but again did not notify Whole Foods of the new Maxxam test results. *See id.*; Mot. Summ. J. [#70-14] Ex. 14 (another customer inquiry).

On July 14, 2014, Consumer Reports contacted Whole Foods for an upcoming article on the sugar content of the Whole Foods Market 365 Everyday Value private label plain yogurt.

2

*See* SGF Consumer Reports E-mail at 3–4. Consumer Reports notified its nutritional testing showed Whole Foods' plain yogurt contained five times the sugar content listed on the product labeling. *Id*; *see also* Mot. Summ. J. [#70-17] Ex. 17 (Consumer Reports Article). Whole Foods requested input and any additional nutritional testing from SGF. *See* SGF Consumer Reports E-mail at1. SGF sent Whole Foods the 2013 Maxxam test results on the same day. *See id.* Consumer Reports published its article on July 17, 2014. *See* Consumer Reports Article.

In August 2014, Whole Foods voluntarily withdrew the Whole Foods Market 365 Everyday Value private label plain yogurt after confirming the sugar content of the yogurt exceeded the sugar content listed on the product label. *See* Mot. Summ. J. [#70] at 5–7; *see also* Mot. Summ. J. [#70-20] Ex. 20 (Test Results).

Eleven putative class action lawsuits were filed against Whole Foods and its affiliates for the mislabeling of sugar content on the company's plain yogurt. *See* Mot. Summ. J. [#70-18] Ex. 18 (Underlying Lawsuits). The lawsuits were centralized before this Court by the Judicial Panel on Multidistrict Litigation. *See In Re: Whole Foods Market, Inc., Greek Yogurt Marketing and Sales Practices Litigation,* No. 1:14-mc-02588-SS (W.D. Tex. Dec, 12 2014).

On September 5, 2014, SGF confirmed its intent to indemnify Whole Foods in the Underlying Lawsuits. *See* Mot. Summ. J. [#70-26] Ex. 26 (Indemnity Letter). Five days later, Whole Foods effectively terminated the Vendor Agreement by permanently discontinuing all plain and flavored private label yogurt products from SGF, citing "allegations made relating to products produced by [SGF]." Mot. Summ. J. [#70-33] Ex. 23 (Termination Letter). SGF made two payments to Whole Foods totaling $75,000 for litigation expenses incurred in the Underlying Lawsuits. Resp. [#77] at 15. Whole Foods settled the Underlying Lawsuits in November 2016. *See* Mot. Summ. J. [#70] at 8.

In July 2015, SGF initiated a lawsuit against Maxxam in the Ontario Superior Court of Justice for inaccuracies in the 2010 and 2011 Maxxam nutritional tests SGF relied upon in its contract with Whole Foods. See Mot. Summ. J. [#70-9] Ex. 9 (Maxxam Lawsuit). SGF asserted Maxxam's testing was "wholly inaccurate and the amount of the total sugars in the yogurt were under-reported." Id. at 5.

In this case, Whole Foods filed a crossclaim against SGF, asserting six claims for breach of contract and fraud. See Am. Cross-Compl. [#37] at ¶¶ 57–100. SGF filed one counterclaim for breach of contract. See Am. Counterclaim. [#49] at ¶¶ 13–21. Whole Foods moves for summary judgment on its affirmative claims and SGF's counterclaim. See Mot. Summ. J. [#70]. The motion is fully briefed and ripe for consideration.

## Analysis

### I. Legal Standard—Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh

the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II. Application

### A. Whole Foods' Breach of Contract Claims

The elements of a claim for breach of contract under Texas law are: (1) a valid contract between the plaintiff and the defendant, (2) performance or tender of performance by the plaintiff, (3) breach by the defendant, and (4) damage to the plaintiff as a result of the breach. *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 858 (5th Cir. 2014). However, "when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex. 2004).

As explained below, Whole Foods has established liability for breach of contract as a matter of law. Damages will be determined at a later time.[2]

#### 1. Failure to Indemnify and Defend

Whole Foods requests summary judgment on its claim SGF breached the Vendor Agreement by failing to indemnify against losses and defend against claims asserted in the Underlying Lawsuits. *See* Mot. Summ. J. [#70] at 11–12. SGF opposes the requested relief, arguing Whole Foods committed a prior material breach of the Vendor Agreement by terminating the relationship with SGF prematurely and without cause. *See* Resp. [#77] at 8–10. Whole Foods' prior breach, SGF contends, discharges SGF's duties under the contract. *Id.*

Most elements of Whole Foods' claim are undisputed. The Vendor Agreement required SGF to "indemnify and hold harmless and defend [Whole Foods] from and against any and all Losses" caused in whole or in party or arising from, among other things, "the failure or alleged

---

[2] The Vendor Agreement entitles Whole Foods to "reasonable" fees and expenses. *See e.g.*, Vendor Agreement ¶¶ 6(b), 11(d). Generally, reasonableness is a question of fact for the jury to decide. *See Yowell v. Seneca Specialty Ins. Co.*, 117 F. Supp. 3d 904, 911 (E.D. Tex. 2015) ("The reasonableness of attorney's fees is a question of fact for the jury"); *see also Roth v. JPMorgan Chase Bank, N.A.*, 439 S.W.3d 508, 514 (Tex. App.—El Paso 2014, no pet.) ("The reasonableness of attorney's fees is generally a fact issue.").

6

failure of a Product to comply with any claim or representation on its label." *See* Vendor Agreement at ¶ 11. SGF did not fully indemnify or defend Whole Foods in the Underlying Lawsuits arising from the mislabeling of sugar content in SGF-supplied yogurt. As a result, Whole Foods suffered damages, including attorney fees, settlement expenses, and other costs.

As noted above, SGF's only argument in opposition to summary judgment is Whole Foods committed a prior material breach of the Vendor Agreement by terminating the agreement prematurely and without cause. Resp. [#77] at 8–10. However, Whole Foods was permitted to terminate the agreement "at any time for any reason." *See* Vendor Agreement at ¶ 14. Thus, SGF's argument that the Vendor Agreement was terminated prematurely or without cause lacks merit. Exercising of rights under the Vendor Agreement does not establish a prior breach, much less a prior material breach discharging SGF of its indemnity and defense obligations.

Accordingly, Whole Foods is entitled to summary judgment on its breach of contract claim related to SGF's failure to indemnify and defend.

### 2. Failure to Pay Reasonable Expenses of Withdrawal

Whole Foods also moves for summary judgment on its claim SGF breached the Vendor Agreement by failing to pay reasonable expenses for its voluntary yogurt withdrawal. *See* Mot. Summ. J. [#70] at 12. As with the claim above, SGF argues Whole Foods prior material breach discharged SGF's obligations to pay for the withdrawal. *See* Resp. [#77] at 10. SGF also challenges Whole Foods' third-party test results and expense documentation. *Id.* at 11.

In the Vendor Agreement, SGF agreed "to pay all reasonable expenses" associated with the withdrawal or recall if any part of the product shipment "fails to comply with any Applicable Law or any of the representations, warranties or covenants made by Vendor in this agreement." *See* Vendor Agreement at ¶ 6. Examples of representations and warranties SGF made were its

yogurt products "would be free from defects," "will not include an illegal, misleading or untrue label claim," and "will not otherwise be misbranded within the meaning of Applicable Law." *Id.* at ¶ 2(a).

SGF breached its duty to pay reasonable expenses associated with Whole Foods' yogurt withdrawal. In August 2014, Whole Foods voluntarily withdrew its private label plain yogurt from the market after confirming with third-party testing that the sugar content of the yogurt was higher than that disclosed on the product label as reported in the Consumer Reports Article. *See* Test Results. The Maxxam 2013 test results SGF sent to Whole Foods also reflected higher sugar content. *See* Consumer Reports E-mail at 7. SGF confirmed the same in its lawsuit against Maxxam, stating the sugar content it relied upon for product labeling was "wholly inaccurate and the amount of the total sugars in the yogurt were under-reported." *See* Maxxam Lawsuit at 5. SGF was obligated under the Vendor Agreement to pay reasonable expenses associated with the withdrawal of the mislabeled yogurt.[3] SGF did not pay for the withdrawal expenses, thereby causing damages to Whole Foods.

SGF's arguments against summary judgment are unavailing. First, SGF argues Whole Foods' termination of the Vendor Agreement was a prior material breach that discharged its obligations to pay for recall expenses. *See* Resp. [#77] at 10. As explained above, SGF has failed to establish a prior material breach by Whole Foods. *See supra* Section II.A.1. Second, SGF objects to Whole Foods' third-party test results as hearsay and unauthenticated. *See* Resp. [#77] at 11. Test results aside, SGF's own statements confirm the inaccuracy of the sugar

---

[3] SGF does not concede in its briefing that the labeled sugar content on the plain yogurt supplied to Whole Foods was inaccurate. However, SGF's statements in the Maxxam Lawsuit and the testimony of its employees in this case demonstrate there is no factual dispute on this issue. *See* Reply [#79-2] Ex. 43 (Hamelin Dep. Tr.) at 1–6 (agreeing the labeled sugar content on plain yogurt was incorrect as confirmed by the 2013 Maxxam test results); Reply [#79-3] Ex. 44 (Plagakis Dep. Tr.) at 5 (confirming labeled sugar content on plain yogurt was incorrect as confirmed by 2014 Maxxam test results).

8

content on the plain yogurt labels, triggering SGF's obligation to cover withdrawal expenses for the mislabeled yogurt. Finally, SGF objects to Whole Foods' internal spreadsheets tracking recall expenses as being hearsay and unauthenticated. *Id.* Whole Foods' supporting affidavit authenticates the evidence and complies with the business record exception to hearsay. *See* Reply [#79-7] Cimbala Decl. Today's order does not prevent SGF from challenging the reasonableness of any expenses at trial.

To summarize, the Court grants Whole Foods summary judgment on its breach of contract claim related to SGF's failure to pay reasonable product withdrawal expenses.

### 3. Breach of Other Contract Provisions

Whole Foods also requests summary judgment on remaining breach of contract claims, including: (1) inaccurate sugar disclosures in violation of ¶ 2 and ¶4 of the Vendor Agreement, and (2) failure to notify of the 2013 Maxxam test results in violation of ¶ 5 of the agreement. *See* Mot. Summ. J. [#70] at 12–13. Summary judgment is appropriate on both claims.

#### a. Sugar content disclosure

As noted above, SGF made certain representations, warranties, and covenants in the Vendor Agreement regarding yogurts products it supplied to Whole Foods. *See* Vendor Agreement at ¶ 2 (reciting representations, warranties, and covenants, including yogurt products "would be free from defects," "will not include an illegal, misleading or untrue label claim," and "will not otherwise be misbranded within the meaning of Applicable Law."); *see also id.* at ¶ 4 (stating SGF "will be solely responsible for confirming that labels and packaging are in compliance with all Applicable Laws."). SGF breached these contractual obligations to Whole Foods' detriment by providing products labeled with inaccurately low sugar content.

9

SGF does not identify a genuine issue of material fact to avoid summary judgment. First, SGF submits it had no reason to doubt the accuracy of the 2010 and 2011 Maxxam test results on which it relied for its original sugar content disclosure. *See* Resp. [#77] at 12. Whether SGF had reason to question the test results is irrelevant because the above-referenced contract provisions do not depend on SGF's subjective belief in the test results. SGF also contests Whole Foods' use of statements from SGF's 2015 lawsuit against Maxxam to "retroactively establish a breach of the Vendor Agreement." *See* Resp. [#77] at 12. In that lawsuit, SGF alleged Maxxam's testing—the same testing SGF relied upon for its original sugar content disclosure—was "wholly inaccurate and the amount of total sugars in the yogurt were under-reported by Maxxam." *Id.* at 5. SGF's statements against Maxxam confirm the inaccuracies of the yogurt labeling, regardless of when those statements were made.

Accordingly, SGF breached the Vendor Agreement by providing inaccurate sugar content disclosures for its yogurt.

b. 2013 Maxxam test results

In the Vendor Agreement, SGF agreed "to notify [Whole Foods] promptly if any Product Test performed according to this Agreement or otherwise detects an undisclosed allergen or otherwise indicates the Product may not comply with Product Specifications." *See* Vendor Agreement at ¶ 5(c). SGF received and reviewed the 2013 Maxxam test results around September 27, 2013. *See* Mot. Summ. J. [#70-11] Ex. 11 (Plagakis Dep. Tr.) at 6–9. These results indicated SGF's plain yogurt did not comply with the sugar content disclosure in the product specifications. *See* Reply [#79-2] Ex. 43 (Hamelin Dep. Tr.) at 1–6 (agreeing the labeled sugar content on plain yogurt was incorrect as confirmed by the 2013 Maxxam test results). SGF breached its duty for prompt notification by waiting over nine months to disclose

the test results to Whole Foods. *See* Resp. [#77] at 6 (confirming 2013 Maxxam test results were sent to Whole Foods on July 14, 2014).

SGF submits it had no obligation to disclose the 2013 Maxxam test results to Whole Foods because the tests were not initiated or performed at the request of Whole Foods or pursuant to the Vendor Agreement. Resp. [#77] at 12. This argument ignores the broad language of the contract in which SGF agreed to promptly notify Whole Foods if any test "performed according to this Agreement *or otherwise*" indicated the yogurt did not comply with the product specifications. *See* Vendor Agreement at ¶ 5(c) (emphasis added). Put another way, SGF was obligated to notify Whole Foods of any test indicating non-compliance with the product specifications, regardless of whether the test was performed pursuant to the Vendor Agreement.

In short, Whole Foods has established another breach of the Vendor Agreement in SGF's failure to promptly notify of the 2013 Maxxam test results.

## B. Whole Foods' Fraud Claims

Whole Foods also moves for summary judgment on its three fraud claims: (1) fraud by omission relating to SGF's alleged failure to disclose the September 2013 test result; (2) fraud by misrepresentation relating to SGF's alleged commitment to indemnify WFMPL; and (3) fraudulent inducement relating to SGF's use of the 2010 and 2011 Maxxam test results. *See* Mot. Summ. J. [#70] at 13–17.

Unlike breach of contract claims, "summary judgment is rarely proper in fraud cases because the intent required to establish fraud is a factual question uniquely within the realm of the trier of fact because it so depends upon the credibility of witnesses." *Rimade Ltd. v. Hubbard Enterprises, Inc.*, 388 F.3d 138, 144 (5th Cir. 2004) (internal quotations and citations omitted).

While Whole Foods has presented circumstantial evidence to support its fraud claims, such evidence does not establish the requisite intent as a matter of law. Accordingly, the Court denies Whole Foods' request for summary judgment on its fraud claims.

## C. Whole Foods' Request for Exemplary Damages

According to Whole Foods, it is also entitled to exemplary damages because of SGF's "fraud, malice, and/or gross negligence." *See* Mot. Summ. J. [#70] at 17–18. Exemplary damages are foreclosed by the Vendor Agreement. *See* Vendor Agreement at ¶ 16 ("The parties waive all rights to punitive damages").[4] Thus, Whole Foods' request for summary judgment on exemplary damages is denied.

## D. SGF's Breach of Contract Counterclaim

SGF asserts a counterclaim for breach of contract based on Whole Foods' premature termination of the Vendor Agreement without cause, failure to pay for discontinued product supply, and failure to indemnify or release SGF from losses caused by Whole Foods' breach. *See* Am. Counterclaim. [#49] at ¶¶ 13–21.

Whole Foods seeks summary judgment on SGF's counterclaim, asserting termination of the Vendor Agreement was for cause, and regardless, all obligations for termination without cause were fulfilled. *See* Mot. Summ. J. [#70] at 18–19. SGF contends genuine issues of material fact remain as to whether Whole Foods' termination was for cause, and whether Whole Foods complied with obligations for termination without cause. Resp. [#77] at 21–26.

---

[4] Whole Foods argues SGF waived this argument because it was not pleaded as an affirmative defense or raised during discovery. Failure to plead a defense does not result in automatic waiver. *See Lee v. United States*, 765 F.3d 521, 524 (5th Cir. 2014) (stating if "a defendant raises the issue at a pragmatically sufficient time, and if the plaintiff is not prejudiced in its ability to respond, there is no waiver of the defense"). Here, trial is not set until February 2019, and Whole Foods has not been prejudiced in its ability to respond to the argument. Based on these facts and the express language of the agreement, the Court declines to find waiver.

As a preliminary matter, Whole Foods' termination of the Vendor Agreement was for cause. Whole Foods sent its Termination Letter to SGF on September 10, 2014. *See* Termination Letter at 1. The Termination Letter references "allegations related to products produced by [SGF]," but does not explicitly state termination was for cause. *See id.* However, prior to Whole Foods sending the Termination Letter, SGF breached the Vendor Agreement by providing inaccurate sugar content disclosures in violation of ¶ 2 and ¶4 of the agreement, and failing to notify of 2013 Maxxam test results in violation of ¶ 5 of the agreement. *See supra* Section II.A.3. In light of SGF's prior breaches, Whole Foods' termination of the Vendor Agreement was for cause. *See* Vendor Agreement at ¶ 14 (stating termination after "breach by [SGF] of the Agreement will be deemed termination for cause.").

SGF's breach of contract counterclaim fails as a matter of law. Whole Foods was permitted to terminate the agreement "at any time for any reason" with written notice. *See* Vendor Agreement at ¶ 14. Thus, SGF's contention the Vendor Agreement was terminated prematurely or without cause is without merit. Because the termination was for cause, Whole Foods had no obligation to pay for finished goods inventory. *See id.* at ¶ 9 (defining obligations "[i]f [Whole Foods], *without cause* discontinues or rebrands a Product") (emphasis added). Finally, SGF has failed to identify any "breach or alleged breach of any representation, warranty, covenant or other obligation of WFMPL set forth in this Agreement," that would have triggered Whole Foods' indemnity obligations. *See id.* at ¶ 11.

For these reasons, the Court grants Whole Foods' request for summary judgment on SGF's breach of contract counterclaim.

## Conclusion

Whole Foods' motion for summary judgment is granted on its affirmative breach of contract claims and SGF's counterclaim, but denied in all other respects.

Accordingly,

IT IS ORDERED that Cross-Claimant WFM Private Label, L.P. (Whole Foods)' Motion for Summary Judgment [#70] is GRANTED in part and DENIED in part consistent with this opinion.

SIGNED this the 18th day of June 2018.

_____
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE